# ALEXANDER *v.* ALEXANDER.

EQUITY PRACTICE; DIVORCE; ALIMONY.

1. A court of equity may, in its discretion, grant leave to a defendant to both demur and file pleas to the whole of a bill of complaint, and the discretion so exercised is not a subject of appeal.
2. *Quære*, whether a party to a divorce suit in which a decree for divorce and alimony has been rendered, is estopped to claim that subsequent proceedings in the cause relating to the payment of alimony, are null and void for want of jurisdiction, when she submitted to the jurisdiction without protest and acquiesced in some of the proceedings.
3. When in a divorce suit in which a decree for divorce and alimony has been rendered, a subsequent order or decree is passed upon the petition of one of the parties for a suspension of the alimony and a counter-petition of the other for an increase, and after a reference to the auditor, *quære*, whether such last order or decree can be reviewed on a bill of review, or whether it is reviewable only on appeal.
4. Under Secs. 732 to 749, R. S. D. C., relating to divorce and alimony, alimony can be allowed in decrees for absolute divorce as well as in decrees for divorce from bed and board.
5. Where a decree for divorce *a vinculo*, at the suit of the wife, allows the wife a certain fixed monthly sum as alimony, and reserves to her the right to apply at any time for an increase, but contains no reservation to the husband for leave to apply for a reduction, the court may nevertheless at any time thereafter entertain an application on his part for a reduction, and upon a proper showing grant it.

No. 828.　Submitted October 7, 1898.　Decided November 1, 1898.

HEARING on an appeal by the complainant from a decree dismissing a bill of review. *Affirmed.*

The COURT in its opinion stated the case as follows:

This cause comes to us on appeal from a decree of the Supreme Court of the District of Columbia, dismissing a bill of review.

It appears from the record that, on May 25, 1877, the

appellant, Belle Alexander, as complainant, instituted proceedings in the Supreme Court of the District of Columbia for a divorce from the bond of matrimony then subsisting between herself and the appellee, Thomson H. Alexander; and that such proceedings were thereafter had as resulted in a decree of that court adjudging that the marriage should be dissolved, and that alimony at the rate of fifty dollars a month should be allowed to the complainant. This decree was rendered on July 11, 1877. It contained this clause in reference to the alimony: "The allowance thus made being without prejudice to the right of the complainant to apply for the increase thereof after the said first day of January, 1878." There was no reservation of right to the defendant to apply for a reduction of the alimony at any time.

On February 15, 1878, it would appear that the alimony was in arrears and unpaid; and the complainant petitioned the court for an order to compel its payment. This order the court made.

On May 19, 1878, the defendant petitioned for a suspension of the alimony; and on November 16, 1878, an order of the court was entered by consent for the suspension of payment until it should be shown to the satisfaction of the court that the defendant's pecuniary circumstances had so far improved as to justify the resumption of payment.

On March 10, 1885, the complainant petitioned for a renewal of the payment of the alimony, and that the amount should be increased to the sum of $200 a month; whereupon the defendant came in with an answer and a counter-petition praying for a revocation of so much of the original decree of July 11, 1877, as allowed alimony. Under these petitions testimony was taken, and there was finally an order or decree made merely denying the complainant's petition. And apparently there was no action on the defendant's application. Upon appeal taken by the complainant from this order to the general term of the

court, the order was reversed, and a decree was rendered by the general term, on May 20, 1892, to the effect that the suspended alimony should be paid by the defendant at the rate of fifty dollars a month from and after April 15, 1890; and, beginning with the date of the decree, alimony thereafter at the rate of fifty dollars a month. The decree contained the following clause: "This decree is without prejudice to any right the said defendant may have in law to apply for a suspension or reduction of alimony for any causes that may arise after the date of this decree."

Availing himself of the benefit of this last clause, the defendant, on October 17, 1892, petitioned the court to reduce the alimony from fifty dollars to twenty-five dollars a month, on the ground of his alleged inability to pay the former amount. After answer by the complainant, the court, on December 3, 1892, entered an order for the reduction as prayed. From this order no appeal was taken; and no further proceedings seem to have been had for about five years.

On December 17, 1897, the defendant filed a petition stating that through misapprehension, resulting from apparent ignorance that there had been a reduction of the alimony at his own solicitation, he had overpaid the amount due the complainant to the extent of $650, and asking for a suspension of the alimony for two years and two months, which would serve to rectify the alleged mistake. There was then, on motion by the complainant, a rule issued on the defendant to show cause why he should not be required to pay arrears; and the complainant also filed a petition for an increase of the alimony. After answers to these several petitions, the whole matter was referred to the auditor of the court. That officer made a report, and there were exceptions to the report. Finally, on March 3, 1898, a decree was made adjudging that the defendant should pay to the complainant the alimony allowed by the order or decree of December 3, 1892, from the date of the last payment to

March 20, 1898, at the rate of twenty-five dollars a month, and from and after the last-mentioned day, alimony at the rate of thirty dollars a month. The defendant appealed from the decree to this court; but how far the appeal has been prosecuted does not appear. The complainant, apparently, did not appeal.

In this condition of things, the complainant, on April 7, 1898, filed the present bill of review, in which the foregoing facts are stated. The complaint of this bill is that all the orders and decrees passed in the cause subsequent to the original decree of July 11, 1877, which, in any way alter or affect such original decree, especially in as far as these orders or decrees reduce the alimony allowed by the original decree, are utterly null and void, on the ground, as claimed, that the original decree had become an absolute finality beyond the power of the court to change in any manner, except, upon the petition of the complainant, to increase the amount of the alimony. And it is charged especially that the last order or decree in the case, that of March 3, 1898, is erroneous in so far as it fails to conform to the original decree in the matter of alimony. The prayer of the bill is, that the decree of March 3, 1898, be reviewed and canceled as to this matter of alimony, and that the decree of July 11, 1877, be renewed.

The defendant, on May 3, 1898, demurred to the bill of review on the general ground of want of equity; and, also, on June 1, 1898, by leave of the court had on that day, without waiving his demurrer, filed two pleas to the bill, which were to the effect that he had paid to the complainant, under the decree of March 3, 1898, all the alimony which had become due and payable, both before and after the filing of the bill of review. The apparent purpose of these pleas was to show that the complainant had acquiesced in the decree of March 3, 1898; and that by such acquiescence he was now estopped from repudiating that decree.

The complainant excepted to the pleas, and moved to

strike them from the record; but the exceptions and the motion were both overruled on June 7, 1898. Then, on June 9, 1898, a final decree was entered, which is in the following terms:

" The above-entitled cause came on for hearing on the bill of review filed by the complainant and the demurrer of the defendant filed thereto, and also upon the pleas of the defendant filed thereto with leave of the court, and the same having been duly argued by counsel of the respective parties, and duly submitted to and considered by the court, it is, this 9th day of June, A. D 1898, adjudged, ordered and decreed that said bill of review be, and the same is hereby, dismissed with costs against said complainant, for which defendant have execution as at law."

From this decree, and also from the order overruling the exceptions to the pleas, and denying the motion to strike the pleas from the record, the complainant has now appealed to this court, and has presented six assignments of error, four of which have reference to the action taken by the court in regard to the defendant's pleas, and two to the dismissal of the bill of review and the sustaining of the defendant's demurrer thereto.

*Mr. D. W. Baker* and *Mr. John C. Gittings.* for the appellant.

*Mr. Wm. J. Miller* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

1. With reference to the pleas, it is urged that the court below should not have allowed them to be filed while the demurrer was pending undisposed of; that it was error to dispose of the appellant's exceptions to the pleas before the demurrer was disposed of; that the exceptions to the pleas should have been sustained; and that the cause should not have been heard on the bill of review, demurrer and pleas. Most of this contention, as is apparent, is addressed to a

question of practice with which the court below should be left free to deal as it deems best in its discretion; and that discretion can not well be reviewed in this court. It is very true, as claimed on behalf of the appellant, it is an elementary rule of equity pleading and practice, that a defendant in equity can not at the same time demur and plead to the whole bill; for it is well settled that, if he does so plead and demur, the plea will overrule the demurrer and eliminate it from further consideration. But it is equally well settled that the court, in its discretion, may grant leave to make joinder of such defenses; and the discretion so exercised is not a subject of appeal. It is quite a frequent practice, the propriety of which has never been questioned, that a court after a demurrer has been filed, will require the party to answer, and order the demurrer to stand over until the final hearing, and then perhaps sustain the demurrer. And if the court can order such proceeding, certainly it can allow it by special leave.

After all, under the circumstances of the present case, it is not apparent that the appellant has been prejudiced by the action of the court in this regard. For, if the defendant, instead of demurring and filing pleas, had simply answered admitting the facts stated in the bill of review to be true, which he now does by his demurrer, and should in such answer set up in addition the facts stated in the pleas, which the appellant by her exceptions admits to be true, and the cause should then be set down for hearing on the bill and answer, as it undoubtedly would have been, it is not apparent how the appellant could be in any better position with respect to the pleadings than she is now. The same precise facts would be before the court; and the only substantial question then as now would be whether there was sufficient in the bill of review to justify its being sustained. We may, therefore, proceed to the consideration of this main question.

2. Of course the bill of review comes too late to affect

directly any of the proceedings had prior to the filing of the defendant's petition of December 17, 1897, upon which the decree of March 3, 1898, was based, as more than two years had then elapsed since the rendition of the last preceding decree; and the bill of review does not seek in express terms to invalidate anything but the decree of March 3, 1898. The previous proceedings we understand to have been recited merely for the purpose of leading up to this last decree, although they are all equally characterized as null and void, in so far as they depart from the original decree of 1877. It may, however, be a question, whether the appellant, having so long submitted to the jurisdiction without protest and having acquiesced in some, at least, of the proceedings, she should now be heard to say that they are all or any of them null and void for the want of jurisdiction. See *Fisher* v. *Shropshire*, 147 U. S. 133. And it may also be a question, whether, under the circumstances of this case, the decree of March 3, 1898, if the contention of the appellant be well founded, was not erroneous merely and to be reviewed, if at all, only by way of appeal, and not by way of a bill of review for supposed want of jurisdiction to render the decree. For the decree was rendered, not only upon the appellee's petition, but likewise upon the counter-petition of the appellant and after plenary proceedings upon both petitions had before the auditor. And if it be conceded, as it must be, that the court had the right at that time to render a decree regulating the alimony to be paid by the appellee to the appellant, and a decree fixing the amount at sixty dollars or at one hundred dollars a month would have been entirely proper, according to the contention of the appellant, it is not apparent how a decree fixing the amount at thirty dollars a month can be anything more than a merely erroneous decree, to be corrected, if at all, by way of appeal, even if the contention be correct that the original decree of 1877 fixed a limit for the alimony below

which the court was never thereafter at liberty to reduce the amount.

3. But, however this may be, and we are not to be understood as expressing any definite opinion on these points, it seems to be proper that we should determine, as far as we may, the substantial question of law involved in the issue between the parties; and that is, whether, when a decree has been rendered for a divorce from the bond of matrimony, and in the decree alimony has been allowed at a certain fixed sum per month to the complainant wife as against the defendant husband, with reservation to the former to apply at any time for an increase, but without any reservation to the latter to apply at any time or under any circumstances for a reduction or suspension of the alimony, for any cause supervening thereafter, the court which rendered the decree has any lawful authority to entertain an application on the part of the husband for a reduction of the amount, and to render a decree for such reduction. The determination of this question, which seems never to have been definitely decided in this District, and to have been somewhat variously decided in other localities, involves an inquiry into the jurisdiction of our courts with reference to the laws governing divorce and alimony.

Proceedings for divorce in this District are entirely the creation of statute law. As is well understood, divorce, whether from the bond of matrimony, or from bed and board, was unknown to the common law, both in England and in our own country. But the ecclesiastical courts have long claimed and exercised the authority to grant limited divorces, that is, from bed and board, or judicial separations, as they have sometimes, perhaps more appropriately, been called. The Parliament of England, we believe, sometimes, although very rarely, assumed the authority to grant absolute divorces from the bond of matrimony; and in our colonial days, in Maryland as in other colonies, the colonial

legislatures occasionally granted divorces of both kinds, there never having been any ecclesiastical courts in the American colonies. In one at least of the States of our Union that authority is yet claimed and exercised by the State legislature. Now, however, both in England and in most of the States of our Union, and in the District of Columbia under legislation by the Congress of the United States, the authority to grant divorces is vested in the courts of general jurisdiction, generally in the courts of equity, to the ordinary proceedings of which proceedings for divorce are usually assimilated.

The legislation of the Congress of the United States on the subject for the District of Columbia is contained in Sections numbered from 731 to 749, both inclusive, of the Revised Statutes for this District, derived mainly from an act of June 19, 1860, slightly modified by an act of June 1, 1870. In these sections the causes are specified for which divorces from the bond of matrimony and from bed and board may be granted; and jurisdiction was conferred on the Supreme Court of the District to hear and determine all applications for divorce of either kind. As specifically applicable to the question now under consideration, some of these sections may be cited.

Section 732 provides that " the proceedings upon a petition for divorce shall be the same as had in other cases, except so far as otherwise provided in this chapter."

Section 745 provides that "in all cases where a divorce is granted, the court allowing the same shall have power, if it see fit, to award alimony to the wife, and to retain her right of dower."

Section 746 provides that " the court may also award alimony to the wife for her maintenance during the pendency of a petition for divorce filed for any of the causes mentioned in this chapter."

Section 747 provides that "the court shall also have power to order and direct, in every case of divorce, who

shall have the guardianship and custody of the children of the marriage so divorced, and who shall be charged with their maintenance."

Section 749 provides that " in case of adultery committed by the wife after judgment or sentence of divorce from bed and board, the court may, on the petition of the husband setting forth and accompanied by legal proof of such adultery, deprive the wife of alimony from the date of her said criminal act, and rescind her right of dower, as well as dispossess her, if the court judge fit, of the care, custody and guardianship of any child which, under the original judgment of the court in granting the divorce, may have been assigned to her."

These, we believe, are all the provisions of the statute which apply, directly or indirectly, to the subject of alimony; and from them it is apparent that we are remitted to pre-existing law for a definition of alimony, its purposes and incidents. These were all well known in the ecclesiastical law of England so far as that law was administered by the ecclesiastical courts of that country; and they were recognized and were well known in the courts of the State of Maryland, and to some extent in the judicial procedure of the District of Columbia as derived to us from that State.

Alimony has been defined to be " the allowance which a husband by order of court pays to his wife, living separate from him, for her maintenance." Bishop on Marriage and Divorce, Sec. 549; Bouvier's Law Dictionary, Title, *Alimony*. It is, therefore, and it has always been held to be, apart from the express provisions of statutes authorizing divorce, an incident merely of separation by judicial decree from bed and board, and never of divorce from the bond of matrimony. See *Crane* v. *Meginnis*, 1 G. & J. 463. For, at common law, and by the dictates of reason, in the absence of statutory enactment, to justify the allowance of alimony, the relation of husband and wife must continue to subsist, although the parties are separated from each other.

In the case just cited of *Crane* v. *Meginnis*, the Court of Appeals of Maryland said : " Divorces in this State from the earliest times have emanated from the General Assembly, and can now be viewed in no other light than as regular exertions of legislative power. . . . On the other hand, the suit for alimony, in this State, as in Great Britain, is a distinct remedy from the proceedings to obtain a divorce, and for a series of years the wife's maintenance has been recoverable through the intervention of our judicial tribunals. So early as the year 1689, in the case of *Galwith* v. *Galwith*, 4 H. & McH. 477, it was asserted in the Supreme Court of the Province, that alimony is only recoverable in chancery, or the court of the Ordinary; and in the year 1777 the act of Assembly was passed which expressly authorized the chancellor to hear and determine all causes for alimony in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts of that country. Since this last period such causes have been continually acted upon by the chancellor, and in some instances appeals have been taken to the appellate courts, and decided on by them."

And in the case of *Tolman* v. *Tolman*, 1 App. D. C. 299, where it was held by this court that the chancery courts of Maryland and the District of Columbia " have had and have exercised full and complete jurisdiction to decree alimony against a delinquent or offending husband, who had deserted or maltreated his wife, and refused to provide her reasonable maintenance," and that the jurisdiction was not limited to cases in which the ecclesiastical courts of England had jurisdiction to grant divorces from bed and board; yet it appears plainly throughout the whole opinion as announced for the court by Mr. Chief Justice ALVEY, that apart from the statute alimony could only be allowed where the relation of husband and wife continued to subsist. In fact, the whole theory of the allowance of alimony is based upon the ground that the relation of husband and wife con-

tinues in full force, and that the moral and legal obligation of the husband to provide for the support and maintenance of his wife remains unimpaired; and alimony is only a commutation of the support and maintenance provided under normal conditions.

But when Congress, by the act of June 19, 1860, conferred upon the Supreme Court of the District the legal authority to grant divorces of both kinds, and provided that, in all cases, both those of divorce from the bond of matrimony and those of divorce from bed and board, the court should have power, if it saw fit, to award alimony to the wife, it not only empowered the court to exercise the jurisdiction which the ecclesiastical courts of England had been accustomed to exercise, but added to it a new jurisdiction unknown to the courts of England, that of granting divorces from the bond of matrimony; and, moreover, it annexed to both the incident which theretofore had appertained only to the ecclesiastical courts and the judicial separations allowed by them, that of the allowance of alimony. In granting this latter authority, however, it must be presumed to have done so as it was then judicially understood and with all the qualifications and limitations that were then inherent in it. The authority was to grant alimony, if the court saw fit to do so, and no distinction was made in this regard between the two classes of divorce. It is very plain, therefore, that the allowance of such alimony in all cases was to be in accordance with the rules and methods then prevailing in the ecclesiastical courts or in the courts of chancery exercising the ecclesiastical jurisdiction or the jurisdiction conferred by the act of Maryland of 1777.

Illustration of the subject may be had by reference to the provision in the Federal Constitution for trial by jury. The provision is that "the right of trial by jury shall be preserved;" but there is no attempt to define what is meant by the expression "trial by jury." But the courts have long since held, and it is well settled law, that it means trial by

jury such as that institution existed at the time of the for-
mation of the Constitution, with all its substantial incidents
of the introduction of testimony under the direction and
control of a court, of its receiving the law in each case from
the court, of secret deliberation, and the requirement of
unanimity in decision, as well as that the jury should al-
ways be composed of twelve men, no more and no less.  And
numerous other similar illustrations might be adduced.  So,
with reference to the subject of alimony now under consid-
eration; when the legislative authority provides for the
allowance of alimony in all cases, without otherwise explain-
ing or qualifying the jurisdiction, it is very clear to us that
it was meant that the courts should proceed in that regard
in accordance with the usages and customs of the ecclesi-
astical courts and of the courts of chancery at the time of
the passage of the act.

Now, what were the usages and customs, and what was
the jurisdiction of the ecclesiastical courts, and of the courts
of chancery, in the matter of alimony at and before the time
of the passage of the act of Congress of 1860?  Beyond all
question, the jurisdiction of these courts was not exhausted
by the rendition of the original decree.  The decree for a
separation was final; the adjudication that alimony to some
extent was payable may have been final; but it was never
contended or maintained that the amount of alimony then
fixed was absolutely final and conclusive for all time and
could not afterwards be modified; on the contrary, the au-
thorities appear to be unanimous to the effect that the adju-
dication was a continuing one, and that the courts retained
the whole subject under their control, increasing or dimin-
ishing the amount of alimony from time to time, as might
seem just under changed or changing circumstances; and
this without reference to the fact that the original decree
might have been entirely silent in regard to the reservation
of right to the parties, or either of them, thereafter to apply
to the court for a modification.  Bishop on Marriage and

Divorce, Sec. 593; Am. and Eng. Encyc. of L. Title, *Alimony,* where numerous cases on the subject are collected.

This position, it is presumed, will not be impugned or contravened even now with reference to divorces from bed and board under the statute. We presume that, as to these, the rule will apply which applied to judicial separations in the ecclesiastical courts, and which gave those courts continuous jurisdiction over the matter of alimony. The argument seems to be that a different rule must govern in cases of divorce from the bond of matrimony, and it is very true that in these cases the result of the adjudication is in some respects radically different from that of the adjudication in the cases of limited divorce. For by a decree dissolving the bond of matrimony the parties are in law absolutely and irrevocably separated from each other, and they become to each other as total strangers. The relation of husband and wife is at an end; and the legal liability of the husband to provide for his wife is definitely terminated. Apart from the statute, no suit for alimony could be maintained in such a case; and the allowance of alimony would be radically inconsistent with the changed relations of the parties. But the statute, for obvious reasons of public policy and upon equitable grounds, authorizes the allowance of alimony even in these cases; and the question is, whether in the allowance of alimony in cases of divorce from the bond of matrimony the character of the decree is of more rigid and absolute finality than that of the decree in cases of divorce from bed and board.

The statute contains no intimation of any difference. On the contrary the intimation is quite the reverse. The implication is that alimony in cases of divorce from the bond of matrimony is placed precisely on the same basis as alimony in cases of divorce from bed and board. Nor is there any good ground in reason for the application of a different rule in the different classes of cases. The argument would seem to be that, because a decree dissolving the bond of

matrimony is, or may become, absolutely final and conclusive, therefore the added provision for alimony must be equally final and conclusive. But this argument is wholly untenable. It is nothing unusual in equity for a decree in equity to be absolutely final in some respects or with regard to some matters, and to be interlocutory and subject to modification in other respects; nor is there any inconsistency in combining an interlocutory order for further proceedings with a final decree. This is common practice in equity.

Now, there is very much greater reason, why, in divorce cases, more than in any other class of cases, the interlocutory or incidental portion of the decrees should continue to remain indefinitely under the control of the court. Decrees of divorce from the bond of matrimony adjudicate only one permanent right—the right of the complainant to have the bond of marriage dissolved and to be in law placed in the position of an unmarried person. But there is no right of propery involved, and none is adjudicated. The decrees affect the *status* of the parties, not necessarily their financial affairs. There is but one contract in controversy, the contract upon which the matrimonial relation is based; and if the courts assume, as they may do, under the statute, to set apart a portion of the husband's property for the use of the divorced wife, or to require him to contribute a certain sum periodically for her support, which is called alimony, it is not in pursuance of any such specific right or contract as obtains in other cases, but upon broad grounds of public policy, because the husband has failed to perform the legal and moral obligation which he assumed when he entered into the matrimonial state, of providing suitably for his wife in accordance with his resources and their station in life. The decree for alimony is based upon the conditions existing at the time at which it is rendered; but these conditions are subject to change. The faculties of the husband at and

before the time of the adjudication to discharge his legal and moral duties may have been ample.   Through circumstances beyond his control, and by no fault of his, they may have afterwards become greatly impaired.   Assuredly it would not be just, even towards a greatly injured wife, who has been compelled to seek the protection of the law against his misconduct, to hold him to the same rigid liability in the days of his poverty as in the days of his prosperity, and to punish him, as for contempt of court, for not doing that which it has become impossible for him to do.   The injustice that might thus be done by a rigid and inflexible decree for the payment of alimony might even be greater in the case of divorce from the bond of matrimony than in that of divorce from bed and board.   In the latter case a wife remains a wife; the matrimonial relation continues to subsist; the moral obligation of the husband to support his wife remains; and they may at any time reconcile their differences, and become one again in fact, as they remain in law.   But, in contemplation of the statute, a husband and wife divorced from the bond of matrimony become strangers to each other; and there is no possibility of reconciliation. The divorced wife is free under the law to contract other matrimonial alliances.   She is free to act for herself, to retain her own earnings, to control her own property.   And yet it is claimed that, no matter how much her financial condition may have been improved, no matter how much her circumstances have been changed, no matter how much her divorced husband's circumstances may have been impaired, and even if he has, through no fault of his own, been reduced to absolute poverty and penury, he still remains legally and morally liable to pay alimony for the support of his divorced wife, living perhaps in luxury, and subject to imprisonment if he fails in such payment.   This would be so grossly unjust as to shock the conscience.   And yet to this injustice the courts would necessarily be led in many cases, if the cast-iron rule prevailed of absolute final-

ity in the matter of the allowance of alimony. We do not think that the statute contemplated anything of that kind.

It is conceded on the part of the appellant, that upon good cause shown of inability on the part of the husband to pay the alimony, the court might order a suspension of payment, and would not, or rather should not, punish him as for contempt of court. But it seems to us that this concession virtually concedes the whole case. If the decree for the allowance of the alimony is of the rigid, inflexible and unchangeable character claimed for it in the bill of review now before us, it is not apparent how it can be suspended any more than it can be modified by a reduction of the amount. Suspension is just as much an alteration of the decree as is reduction of the amount, and it would seem to be an absurdity for a court to hold that it could indefinitely suspend the payment of alimony to the amount of fifty dollars a month, because it was shown that the divorced husband could not pay the amount, but that it could not modify the decree so far as to authorize the substitution of thirty dollars for fifty dollars, when it appeared that the husband could pay the thirty dollars, but could not pay the fifty dollars. We fail to see wherein this would serve the interest of the divorced wife, or the requirement of public policy. If there is a power in the court to suspend the payment of the alimony, there is undoubtedly a power to reduce the amount. The one can be inferred from the statute as well as the other. And if it be argued that the power to suspend is only indirectly exercised by the refusal of the court to punish the party as for contempt during the continuance of his inability, this position also is untenable; since no one should be required to wait until he is in a position of apparent contempt of court. And moreover, if the court may decline to punish for contempt, and thus virtually suspend the payment of alimony, it may base its action or refusal upon a condition that the party will pay the lesser

amount, which it is shown that he can pay; and thus by a subterfuge the same result would be reached.

We believe that it is also conceded that if there is a reservation to the husband in a decree for the allowance of alimony that he may apply to the court at any time for a reduction, the court would then have the authority to make such reduction. And it is claimed that, as there was no such reservation in the original decree in this case, the court is now powerless in the premises. Undoubtedly it would have been better in the original decree to have included a reservation to both parties to move at any proper time thereafter for a modification in the matter of alimony upon good cause shown for such modification. And yet it is not quite apparent how the court could have well reserved to itself the authority to modify a decree if that authority was not already vested in it by law. If parties are entitled to a final decree, it is the duty of courts to render such a decree, and not to hold the parties or their cause indefinitely by means of interlocutory or continuing orders. And such undoubtedly would be the duty of the courts in ordinary cases. The maxim of the law is "*Interest reipublicæ ut finis sit litium.*" But this maxim does not apply with the same force to proceedings for divorce as to other cases. In proceedings for divorce the jurisdiction of the courts is in some things necessarily continuous. In the case of the custody and maintenance of the children of the unhappy marriage the court must necessarily retain a continuous jurisdiction. The enforcement of the payment of alimony implies a continuous jurisdiction. And the express provision of Section 749 of the Revised Statutes for the District, that, after a decree of divorce from bed and board, a divorced wife committing adultery might be deprived of alimony, also implies the exercise of continuous jurisdiction. Nor is this last provision a denial by implication of the authority which we have sought here to show as existing, as it might posssibly be

claimed to be. That provision seems to have been intended to obviate the force of some decisions which had held that a wife divorced from bed and board, who thereafter committed adultery, should not on that ground alone be deprived of alimony. The case is not one where the assertion of one thing implies the exclusion of all other things.

Undoubtedly decrees for the allowance of alimony are in a certain sense to be regarded as final. They are final and conclusive, until for good cause accruing thereafter they are changed or modified; and, in general, it is only for after-accruing cause that they may be modified; and the modification usually takes effect only from the date of the accrual of such cause, and does not go back of it. Instalments of alimony, when they have become due and are in arrears, may be enforced extra-territorially as foreign judgments are enforced. *Barber* v. *Barber*, 21 How. 582; *Cheever* v. *Wilson*, 9 Wall. 108; *Tolman* v. *Leonard*, 6 App. D. C. 224. And in various other respects a decree for the payment of alimony, with reference to the instalments that have become due, may be regarded as a finality. And yet that they are not merely money debts, in the full sense of those words, and that a decree for the payment of alimony is not a decree for the payment of money, with the conclusiveness incident to an adjudication of right, is very clear from the fact that the court which awards the alimony may enforce its payment by imprisonment of the delinquent husband, which it could not lawfully do, in the face of the statute abolishing imprisonment for debt, if the decree were a money decree with the finality incident to such decrees. *Tolman* v. *Leonard*, 6 App. D. C. 224.

In this last-cited case this court said: " The allowance of alimony is not in the nature of an absolute debt. It is not unconditional and unchangeable. It may be changed in amount, even when in arrears, upon good cause shown to the court having jurisdiction." And while this was said

rather by way of illustration and argument than because the question now before us was distinctly involved in that case, yet it expresses what we believe to be the well-founded law and the well-established practice in all such cases.

Apparently opposed to the views here expressed are certain decisions cited from the courts of Maine, Rhode Island, New York, Ohio, Alabama, and Kansas, and one also from the Supreme Court of this District. But as all these decisions except the last rest upon provisions of local law, they afford no safe criterion for our action. In most of them, as will be seen by examination of the cases, the so-called alimony allowed was not alimony in the proper sense of the term, as we understand it, but was an arrangement of property interests between the parties. It was said in one of them, for instance, the case of *Smith* v. *Smith*, 45 Ala. 264:

"This allowance to the wife, is not, in fact, alimony in the sense of the ecclesiastical law of England; but it is more strictly an arrangement in lieu of a division of the estate between the parties so as to return to the wife her just portion of that property which mutually belonged to both during the marriage, and which the labor and the care of both may have equally contributed to procure and preserve."

In the case of *Sammis* v. *Sammis*, 14 R. I. 215, a portion of the husband's estate consisting of one-half of the rents of the realty for life, and one-half of the personal property absolutely, was set apart as the property of the wife upon the rendition of a decree in her favor for divorce from the bond of matrimony. Of course, this was not alimony in our sense of the term, or in the sense of the ecclesiastical law of England; and the decree for the allowance was properly held absolute and final, and not to be modified on subsequent application by the husband.

So, likewise, in the case of *Petersine* v. *Petersine*, 28 Ohio State Rep. 559, and in the case of *Mitchell* v. *Mitchell*, 20 Kan. 665, there was an allowance to the wife of a sum in gross out of the husband's property, payable, it is true, in

13 Ct. App.—24

instalments, but still a sum in gross to be paid within a definite time; and it was held that the decree for such allowance was a final and irrevocable decree.

And such also was the case of *Fries* v. *Fries*, 1 Mac-Arthur, 291, in the Supreme Court of this District. There, in a decree for the dissolution of the bond of matrimony between the parties, there was a provision inserted by agreement between the parties, that the husband should convey to his wife a certain house and lot in the city of Washington, upon her payment to him of the sum of $500 within ninety days. After the lapse of two terms of the court, it was sought to have this period of time extended, upon the theory that the matter of alimony was always within the control of the court; and it was held that the decree was final and absolute, and could not be changed as desired. But that was plainly not alimony in the proper sense of the term, but an arrangement of the property between the parties. It is true that in the opinion of the court in that case it was said:

"It was suggested on the argument that the modification of this decree was in reference to alimony, and that that matter was always under the control of the court of equity. This doubtless is so during the pendency of the suit; but after a final decree, it is no longer subject to alteration or revision on petition or *ex parte* affidavits any more than is the divorce itself, unless, as is often provided in the final decree, either party be at liberty thereafter to apply to the court for a modification of such decree in respect to alimony."

This undoubtedly was a correct statement of the law as applicable to the case under consideration; but it is very clear that the generality of the language used would have to be restricted in its application to other and different cases.

In only two of the cases cited on behalf of the appellant, that of *Sampson* v. *Sampson*, 16 R. I. 456, and that of *Smith* v. *Smith*, 45 Ala. 264, was there alimony decreed of monthly payments of indefinite continuance, such as we have in the

case under consideration; and in both cases the courts are careful to base their decisions upon the rigid requirements of their several statutes, while admitting that the rule under the ecclesiastical law of England would be entirely different.

Now, we think that Congress, in the enactment of the statute of 1860, intended to incorporate, and did in fact incorporate, into it the provisions of the ecclesiastical courts of England and of the courts of chancery of Maryland and this District in regard to alimony; and that it intended to make, and did in fact make, the allowance of alimony in accordance with the rules and usages of those courts an incident in the granting of divorces both from the bond of matrimony and from bed and board, however inconsistent in theory the allowance of continuing alimony may be to the new relation created between the parties in the former class of cases. While it is competent for the court that grants a divorce from the bond of matrimony to commute the alimony and to assign a sum in gross or a specific portion of the husband's property to the wife for her support and maintenance, and thereby to make the decree for such allowance final in every respect, yet, under the statute, which in this regard seems studiously to make no difference between the two classes of divorce, if the court in fact allows to the wife divorced from the bond of matrimony the same kind of alimony which it would allow to a wife divorced merely from bed and board, it is not apparent why it should lose control of the one when it does not lose control of the other. Certainly there is no warrant for any such distinction in the statute, and we find none in reason. The fact that in the one case the parties become strangers to each other in law, while in the other case they remain husband and wife, although separated, would seem to be irrelevant and immaterial, when the question is merely a collateral one of a provision for the subsistence thereafter of the wife. That provision, under the statute, may be made equally well by the adjudication of

an allotment once for all to the.wife, when the adjudication in its very nature becomes ·final, or by the award of peri- ·odical allowances, payable from time to time indefinitely, under the control and supervision of the court.

We think that a decree for the payment in payments periodical and of indefinite continuance was necessarily a decree for continuing superintendence by the courts, and which, therefore, for good cause accruing afterwards, the court might properly modify, so far as concerned its future execution. And being of this opinion, we are necessarily led to the conclusion that the decree appealed from should be *affirmed, with costs. And it is so ordered.*