394 P.2d 163

**Neal A. JORDAN, Plaintiff-Respondent,**

**v.**

**Jacquelin A. JORDAN, Defendant-Appellant.**

**No. 9455.**

Supreme Court of Idaho.

July 17, 1964.

Jacquelin A. Jordan, pro se.

Merrill & Merrill, Pocatello, for respondent.

McFADDEN, Justice.

This appeal is the most recent chapter in extended litigation between the parties who were formerly husband and wife. Their marriage was dissolved by a decree of divorce entered in 1954, the judgment granting the divorce, being affirmed on appeal to this court the same year. Jordan v. Jordan, 75 Idaho 512, 275 P.2d 669. Subsequent to that time there have been motions for modification of that judgment filed by both parties. In the interests of clarity, the parties will be referred to by name, and the various motions designated by the name of the moving party and date of the motion.

After entry of the 1954 decree, Mr. Jordan, in November, 1957, submitted to the court his motion to modify the original decree of divorce, to be relieved of his obligation to pay the sum of $175.00 per month to Mrs. Jordan for her maintenance and support. This 1957 motion of Mr. Jordan culminated in an order of March, 1958, which modified the pertinent provisions of the decree of divorce, to read as follows:

"That the plaintiff [Mr. Jordan] is hereby required to pay to the defend-ant [Mrs. Jordan] for her maintenance and support the sum of $175.00 per month, payable monthly on the 6th day of each and every month beginning February 6, 1954 and ending on the 6th day of April, 1959, provided, how-ever, upon adequate showing of the defendant of her inability to support herself, the Court shall, upon proper representation on or before the 6th day of April, 1959, reconsider the ques-tion of alimony."

In March, 1959, Mrs. Jordan, by her attorney, moved for a second modification of the divorce decree. In her motion, among other things, she sought a continua-tion of the alimony awarded by the decree of divorce. In opposition to Mrs. Jordan's 1959 motion, Mr. Jordan submitted a mo-tion to dismiss. Hearing was had on these motions, and the court entered an order in August, 1960, wherein the court found Mrs. Jordan's motion to continue the alimony payments to be without merit, and dismissed her motion for modification. The effect of the dismissal of Mrs. Jordan's 1959 motion was to terminate all alimony payments as of April 6, 1959. No appeal was taken from the order dismissing Mrs. Jordan's 1959 motion for modification.

The next stage of this litigation oc-curred three years later, when Mrs. Jordan, representing herself, in October, 1963, filed an instrument entitled "Motion for Modifi-

cation of Decree", wherein she moved "* * * the Court for modification of the now-existing Modification of Decree, as effected August 22, 1960, * * *". Mrs. Jordan did not accompany this motion with any affidavit, but recited eight separate reasons why it should be granted, the first of which asserts:

"That plaintiff's [Mr. Jordan's] motion to modify the then-existing decree, insofar as it contends the ability of defendant, movant here [Mrs. Jordan], to secure a teaching position, was based upon misrepresentation, * * *". Thereafter is set out five sub-paragraphs, which will be discussed at greater length hereafter in this opinion.

The second reason for modification pertains to an assertion that Mr. Jordan did not submit all information to the Court concerning his relationship with his then attorneys and particularly in so far as exchange of professional fees was concerned. By the third reason she asserts failure of Mr. Jordan to fully inform the court as to certain insurance policies. The fourth pertains to matters before the court dealing with grounds for divorce, as does the fifth ground. The sixth asserts that by reason of claimed "manipulation" she has lost certain enterprises. The seventh asserts refusal of Mr. Jordan to submit his books for audit, claiming a greater worth on his part than submitted to the court.

The eighth ground pertains to the condition of her health.

Examination of the last seven of the asserted reasons set forth by Mrs. Jordan discloses that they each pertain to facts before the court at the time of the initial hearing on the divorce action, or to issues before the court at the time of the hearing of Mr. Jordan's 1957, motion for modification.

In opposition to Mrs. Jordan's October, 1963, motion, Mr. Jordan, in November, 1963, moved for a dismissal of Mrs. Jordan's motion on the ground it failed to state any basis for modification, and he also moved to strike her motion as failing to state any claim or right upon which relief could be based. He asserts that there is no alimony award upon which a modification can be made, and the issue has been determined and the cause is res judicata, the time for appeal having lapsed.

The trial court granted Mr. Jordan's, November, 1963, motion to dismiss and motion to strike, and Mrs. Jordan appealed from that order of the court.

Six Assignments of error have been made by Mrs. Jordan. These are directed to the trial court's granting of Mr. Jordan's motion to dismiss. It is asserted that the trial court erred in determining that the questions presented by her 1963 motion for modification was res judi-

cata, and in failing to consider what she asserts to be extrinsic fraud. She also claims error in the court's not giving consideration to conditions set forth in previous motions. She complains of delays involved in having the issues presented in the trial court and asserts it was necessary again to consider the issues presented at the hearing which culminated in the trial court's March, 1958, order. Throughout the assignments of error there are statements asserting "extrinsic fraud", "collateral forces", and "manipulations" by her former husband, to her detriment.

First, it must be pointed out, that these assignments of error fail to comply with the appellate rules of this court that require an appellant's brief to contain " * * a distinct enumeration of the assignments of error. Assignments of error shall not be redundant." Appellate Rule 41(2) as amended. However, it is apparent that Mrs. Jordan claims error was committed by the trial court when it determined it had no authority to modify the decree after the initial award of alimony had subsequently been terminated on a day certain. It is also apparent she is claiming that there was fraud perpetrated. The record before this court contains no transcript of any of the previous proceedings, nor does it contain any affidavits on her part specially pointing to the areas of the

asserted "fraud", "manipulations" and "collateral forces".

■ The principal issue presented is whether the trial court had jurisdiction to grant Mrs. Jordan's October, 1963, motion for modification. The original decree had provided for $175.00 per month alimony for her support. Subsequently this decree was modified and these support payments were terminated on Mr. Jordan's motion as of April, 1959. Inherent in this issue is the question whether a trial court possesses the authority, by an order of modification, to terminate the award of alimony previously decreed. A comparable problem faced the Supreme Court of California and was resolved by that court in the case of McClure v. McClure, 4 Cal.2d 356, 49 P.2d 584, 587, 100 A.L.R. 1257 (1935) to the effect that under the provisions of California Civil Code § 139, the court was authorized to terminate finally an award of alimony previously directed. Therein the Court stated:

"The power on the trial court by section 139, Civil Code, is properly described as a grant of continuing jurisdiction for the reason that the court is empowered under said section to make orders for the support of the wife which shall not be final, but subject to modification. But where the court makes an order releasing the husband permanently from liability for alimony,

and thereby indicates an intent that the order shall be final and not subject to modification, it is not such an order as may be modified under section 139, Civil Code, by thereafter imposing liability for alimony."

This decision of the California Court was decided under the then existing provisions of the California law comparable to I.C. § 32–706.

The authority of a trial court to modify its decree of divorce concerning alimony is to be found in the application of I.C. § 32–706, which authorizes a modification of its decree in the event of an award of alimony. In McDonald v. McDonald, 56 Idaho 444, 55 P.2d 827, this Court held that where the initial decree did not award alimony, absent an appeal from the decree, and after lapse of the statutory time for modification or amendment of the decree, a trial court is not authorized under the law to entertain a petition to modify the provisions of that decree. See: Annot: 83 A.L.R. 1248; Mathers v. Mathers, 42 Idaho 821, 248 P. 468. By analogy, the same situation is applicable to the case at bar. By order of the trial court, all alimony payments ceased after April, 1959. No appeal was taken from that order, and the statutory time for a modification or amendment thereof has expired. We agree with the conclusions reached by the Supreme Court of California in McClure v. McClure,

supra, that under such situation, where the time for amendment has expired, and no appeal taken, there is no residual authority of the trial court later to modify the decree terminating alimony payments. See also: Garver v. Garver, 102 Ohio St. 443, 133 N.E. 551 (1921); Greer v. Greer, 31 Cal. App. 39, 87 P.2d 388 (1939); Grenall v. Grenall, 169 Cal.App.2d 748, 337 P.2d 896 (1959); Annot. 100 A.L.R. 1262.

The trial court was thus correct in its ruling granting Mr. Jordan's November, 1963, motion to dismiss. The previous order terminating the alimony payments having become final, the trial court was without power to modify it. Mrs. Jordan's, October, 1963, motion to modify having been properly dismissed, it is unnecessary to consider the propriety of the order of the trial court granting Mr. Jordan's motion to strike.

Another issue presented by this appeal deals with the first reason set forth by Mrs. Jordan in her October, 1963, motion for modification. She asserted that Mr. Jordan's 1957, motion for modification of the alimony provisions of the decree of divorce insofar as it contended she was able to secure a teaching position, was based upon misrepresentation. She asserts that Mr. Jordan caused her application for a teaching position to be withdrawn from the files of the school, making it impossible for her to secure employment; that she had no

knowledge of this; that all parties knew only one application is submitted to any given school; that she suffered a loss of salary by reason of such actions. By her assignments of error Mrs. Jordan asserts that the trial court failed to consider such facts which she claims to constitute extrinsic fraud and to have erred in granting Mr. Jordan's motion to dismiss and strike. As we understand her position, in effect, Mrs. Jordan is contending that fraud was practiced upon the court and upon her by Mr. Jordan at the time of the hearing on Mr. Jordan's 1957 motion for modification; that by reason of such fraud her 1963 motion, to modify the court order granting Mr. Jordan's 1957 motion, should have been granted.

I.R.C.P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. * * *" I.R.C.P. 7(b) (1) states: "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. * * *" It is our conclusion that the allegations contained in her 1963 motion, fail to meet the requirements of particularity. Assuming all the allegations to be true, it cannot be determined from her motion that such fraud was practiced on

the court as to vitiate the proceeding had on Mr. Jordan's 1957 motion for modification, keeping in mind that after the hearing on Mr. Jordan's 1957 motion, the matter of alimony and continuance of an award was again heard in June, 1960, on Mrs. Jordan's 1959, motion to modify the decree. From the allegations in her present motion it cannot be determined but what the facts upon which she relies were available to her at that time. No record of the proceedings of either of these hearings has been submitted to this court showing that the allegations of her present motion were not presented to the trial court. Presumptions are in favor of the regularity and validity of the action of the trial court where the record is silent. Hartenbower v. Mutual Ben. Life Ins. Co., 67 Idaho 254, 175 P.2d 698. As stated in Judy v. Reilly Atkinson & Co., Inc., 59 Idaho 752, 757, 87 P.2d 451:

"In Hill v. Porter, 38 Idaho 574, 223 P. 538, sec. 4 of the syllabus is as follows:

" 'It is presumed that the decree of a district court is regular and valid, and the burden of establishing error is on the party alleging it.' "

In Baldwin v. Mittry, 61 Idaho 427, 429, 435, 102 P.2d 643, this court stated:

" * * * The rule would seem to be that error is never presumed on appeal, and since the appellate court need not search the record for possible errors;

the burden of showing it is on the party asserting it, or as sometimes stated, the burden of showing error affirmatively is upon the appellant. (citing cases.)"

See also: Clear v. Marvin, 86 Idaho 87, 383 P.2d 346, and cases therein cited.

It is our conclusion that appellant failed to sustain the burden on her part of showing error by the trial court, and its order of dismissal is hence affirmed.

Subsequent to the appeal being taken, Mrs. Jordan sought to amend one of the paragraphs of her October, 1963, motion for modification. It being determined that the trial court did not err in dismissing this motion, no purpose would now be served by granting such an amendment at this time, and her application therefor is denied.

No costs allowed.

KNUDSON, C. J., SMITH, J., and THOMAS, D. J., concur.

TAYLOR, Justice (concurring in part and disssenting in part):

I concur in the opinion that the order of dismissal be affirmed on the ground that Mrs. Jordan has not established grounds for reversal.

I dissent from the portion of the opinion which declares that the trial court was without power to modify its previous order terminating alimony payments.

It should be recalled that during the greater part of the 19th century, in both this country and in England, marriages were not dissolved by judicial fiat. The legislative bodies were the only authorities who exercised the power to grant an absolute decree of divorce. Jones' Blackstone, Vol. 1, Husband and Wife, § 594, p. 620.

In 1875 our territorial legislature conferred upon the district courts the exclusive jurisdiction to grant a divorce from the bonds of matrimony. Rev.Laws of Idaho, 1874–1875, p. 639. In section 7 of this act the courts were given power to make allowances for the support of a former wife, as follows:

"In any action for a divorce, the court may, during the pendency of the action, or at the final hearing or afterwards, make such order for the support of the wife, and the maintenance and education of the children of the marriage as may be just, and may at any time thereafter annually vary or modify such order, as the interest and welfare of the children may require."

In 1887 this statute was altered to its present form (Rev.Stat. of Idaho, § 2474) as follows:

"Where a divorce is granted for an offense of the husband, including a divorce granted upon the husband's complaint, based upon separation with-

out cohabitation for five (5) years, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support as the court may deem just, having regard to the circumstances of the parties respectively; and *the court may, from time to time, modify its orders* in these respects." (Emphasis and parenthesis added.), I.C. § 32–706.

Assuming the power to award alimony in cases of absolute divorce rests solely with the legislature and that, a fortiori, the court may not provide for the maintenance of a former wife unless such power is conferred by statute, we must ascertain whether this statute, properly interpreted, entitled a district court to hear and determine the merits of appellant's motion for modification. In Alexander v. Alexander, 13 App.D.C. 334, 45 L.R.A. 806 (1898), the court of appeals was confronted with the task of interpreting an act of congress which authorized the Supreme Court of the District of Columbia to grant decrees of absolute divorce and award alimony to the wife. The statute governing alimony read as follows:

"Section 745 provides that 'in all cases where a divorce is granted, the court allowing the same shall have power, if it see fit, to award alimony to

the wife, and to retain her right of dower.'" 13 App.D.C. at 342.

In his search for legislative intent, Justice Morris discussed the jurisdiction of the old ecclesiastical courts and of the courts of chancery, in the matter of awarding alimony, at and before the time of the passage of the act of congress. He noted,

"The decree for a separation was final; the adjudication that alimony to some extent was payable may have been final; but it was never contended or maintained that the amount of alimony then fixed was absolutely final and conclusive for all time and could not afterwards be modified; on the contrary, the authorities appear to be unanimous to the effect that the adjudication was a continuing one, and that the courts retained the whole subject under their control, increasing or diminishing the amount of alimony from time to time, as might seem just under changed or changing circumstances; and this without reference to the fact that the original decree might have been entirely silent in regard to the reservation of right to the parties, or either of them, thereafter to apply to the court for a modification." 13 App.D.C. at 346.

and posed the question of,

"whether in the allowance of alimony in cases of divorce from the bond of

matrimony the character of the decree is of more rigid and absolute finality than that of the decree in cases of divorce from bed and board." 13 App.D.C. at 347.

and concluded,

"The statute contains no intimation of any difference. On the contrary the intimation is quite the reverse. The implication is that alimony in cases of divorce from the bond of matrimony is placed precisely on the same basis as alimony in cases of divorce from bed and board. Nor is there any good ground in reason for the application of a different rule in the different classes of cases." 13 App.D.C. at 347.

I agree with the thinking of Justice Morris. It seems clear from the language of our statute that the legislature, in transferring to the courts the power to grant divorces from the bonds of matrimony, professed to annex those incidents of continuous jurisdiction which our district courts had previously exercised over allowances for separate maintenance. For other authorities supporting the theory that alimony, in its nature, is not final, see: 71 A.L.R. 700, Anno. III. b. 5, 738–740.

Unfortunately, this court in Mathers v. Mathers, 42 Idaho 821, 248 P. 468 (1926), and McDonald v. McDonald, 56 Idaho 444, 55 P.2d 827 (1936), in following the rationale of Howell v. Howell, 104 Cal. 45, 37 P. 770 (1894), has given our statute a highly technical and restrictive interpretation. We note that in New York, where the restrictive construction has prevailed, the legislature has been forced to amplify the statute so as to indicate with overexacting precision its will to give the courts continuous jurisdiction over the economic welfare of a former wife. Clevenger's Practice Manual, 1957, Civil Practice Act, Matrimonial Actions, § 1170.

Provisions of the compiled laws in this state are to be liberally construed "with a view to effect their objects and to promote justice." I.C. § 73–102. Further, in Good v. Good, 79 Idaho 119, 311 P.2d 756 (1957), this court repudiated the theory that power to award alimony, in absolute divorce, rests solely on statute. In that case we held that I.C. § 32–706, supra, did not prohibit the district court from exercising its discretion in awarding alimony in a case where a divorce is granted to the husband for the fault of the wife.

The California court in McClure v. McClure, 4 Cal.2d 356, 49 P.2d 584, 587, 100 A.L.R. 1257 (1935), in my opinion, has extended the rule, widely accepted, that where the original decree makes no provision for alimony none may thereafter be allowed. The rationale of the rule was that where no alimony was allowed, there

was no order to be modified, within the contemplation of the statute. The statute may be arguably open to such construction. However, a more reasonable basis for the rule has been advanced. In such cases the courts have said that where alimony was an issue in the divorce action, the failure of the court in its decree to allow alimony is to be regarded as a determination by the court that the wife is entitled to none. Usually in such cases it is found that the wife has sufficient separate estate or income, or a sufficient estate is settled upon her by the decree, by division of community property, or otherwise, to provide for her support. Duvall v. Duvall, 215 Iowa 24, 244 N.W. 718 (1932), 83 A.L.R. 1242, Anno. 1248.

In the McClure case, the original decree provided for alimony. The holding that the trial court could by subsequent order permanently divest itself of authority to modify its previous orders in respect to alimony appears to overrule the statute and deny the authority granted by the legislature. Furthermore, in the McClure case there was a suggestion that the wife had remarried, which in that state was a statutory ground for cancellation of alimony.

In McDonald v. McDonald, 55 Idaho 102, 39 P.2d 293 (1934), and 56 Idaho 444, 55 P. 2d 827 (1936), the parties had entered into a property settlement agreement prior to the entry of the divorce decree. Neither the property rights of the parties, nor the right of the wife to alimony were litigated in the divorce action or concluded by the decree. Hence, the decree in that case was to be regarded as a judgment to the effect that the wife was not entitled to alimony because she had acquired by contract a sufficient estate for her support. In that case this court held (56 Idaho 457, 55 P.2d 827) that the district court was without jurisdiction to reopen the divorce decree after it had become final. However, the statute (§ 32–706, supra) was not referred to in that opinion. The court cited Mathers v. Mathers, 42 Idaho 821, 248 P. 468 (1926), and Justice Budge in a concurring opinion also cited the Mathers case but likewise did not refer to the statute here considered.

In the Mathers case it was held that where a divorce decree made no provision for alimony and the decree had become final, the court had no jurisdiction thereafter to reopen the decree for the purpose of modifying it by the allowance of alimony. In that case the court called attention to the fact that a share of the community property had been awarded to the wife. Again the court did not refer to or construe the statute here considered. It did, however, cite the case of Howell v. Howell, 104 Cal. 45, 37 P. 770, 43 Am.St. 70 (1894). In the cited case the California court construed California Civil Code,

§ 139 (the same as our I.C. § 32–706, here involved), saying:

"But the latter section clearly contemplates that the right to alimony, as well as other financial and property rights, shall have been presented and litigated in the action for divorce, and established by the judgment; and the provision is that, where the right to alimony has been thus established, the amount may be changed by a modification of the order. But in the case at bar there was nothing to 'modify.' " Howell v. Howell, 104 Cal. 45, 37 P. 770, at 771.

In this case Mrs. Jordan's right to alimony was litigated and established by the original decree. The husband's motion for modification was based upon the ground that at the time the decree was entered, allowing $175 per month alimony, the wife was ill and unable to support herself, and that at the time of the motion she was well and able to provide for herself; and the order modifying the decree by providing for the termination of alimony payments on April 6, 1959, was based upon that change in her condition. Here there was no remarriage and no provision by way of property division or settlement to support a permanent and final termination of the issue of alimony. Furthermore, the court in its order expressed a doubt regarding Mrs. Jordan's ability to support herself, to wit:

"provided, however, upon adequate showing of the defendant of her inability to support herself, the Court shall, upon proper representation on or before the 6th day of April, 1959, reconsider the question of alimony."

I do not think this order is properly construed as expressing an intent to permanently relieve the husband of the obligation to support his former wife.

"Doubtless all that the court intended was such a cessation of payments, and not an annulment of the order itself." Ross v. Ross, 1 Cal.2d 368, 35 P.2d 316, 317 (1934).

In any event, the record reveals no ground upon which the court could permanently divest itself of jurisdiction over the issue of alimony, and, in the face of the statute, it should not be held to have done so. Anno. 71 A.L.R. 723, at 728–740; Anno. 100 A.L.R. 1262.

The rule here adopted will deprive the courts of this state of the power to grant relief in any case no matter how worthy or meritorious. The intent of the legislature was to leave the courts free to exercise a sound discretion, and to do equity in such case, to the end that a wife, even though without fault, need not become an object of charity.