247 P.2d 172

**BRANCH v. WALKER et ux.**

No. 5443.

Supreme Court of New Mexico.

Aug. 6, 1952.

Noble & Spiess, Las Vegas, for appellants.

A. L. Zinn, Dean S. Zinn, Sante Fe, for appellee.

LUJAN, Chief Justice.

This action was brought by Alejandro Branch against Cecil R. Walker and Amy E. Walker, his wife, to recover on a promissory note given by the latter to the former, for a part of the purchase money of real estate and personal property, and to foreclose the mortgage given thereon. It appears that Branch sold to the Walkers four tracts of land together with livestock, farming implements and other personal property for $10,150, on which $5,000 had been paid, and the action is to recover the balance. The description of the land in the deed is as follows:

"Tract 1. 1485 acres, enclosed by fence, being the home place of party of the first part, bounded as follows: North by Lensenal and public road from Cleveland to Vallecitos; on the South by land of Cassidy Brothers and on the West by lands of Perfelta Espinosa, Isabel Trujillo and Mora Grant land.

"Tract 2. 102 acres bound as follows: on the North by Manuel Trujillo; on the South by Mel Walker; on the east and west by Mora Grant land formerly of Edward B. Wheeler now of the Union Land and Grazing Company,

"Tract 3. A tract of land bounded on the north by Pablo Trujillo on the South by Emelia Trujillo and on the east and west by property formerly of J. M. Daniels, now deceased.

"Tract 4. A tract at the place known as Cerros Pelones in the Canyon of Rio de Casa formerly owned by Jose Canuto Trujillo and Miguel Trujillo and bounded on all sides by lands within the U. S. Forest.

Defendants' answer admits the execution of the note and mortgage but denies that they are indebted to plaintiff in any sum whatsoever. They counter-claimed and alleged that the tracts of land described in plaintiff's complaint did not in fact contain the acreage therein alleged. That tract No. 1 contained only 666.55 acres; tract No. 2 contained 108 acres; tract No. 3 contained 58.56 acres; and tract No. 4 contained 320 acres; making a total of

1,153.11 acres. That relying upon plaintiff's representation that the ranch contained 1,902 acres of land they agreed to purchase same. That had they known the true acreage of said land they would not have entered into said agreement. That on or about August 24, 1949, they learned for the first time that the ranch did not contain 1,902 acres but actually contained 1,153.11 acres, showing a deficit of 748.89 acres. That plaintiffs' representation as to the quantity of land included in said ranch was false, was known by plaintiff to be false, was made by plaintiff to induce them to buy the same, and that relying upon the truth of said representation and not knowing the actual acreage contained in said ranch they were induced to purchase same. That there was a partial failure of consideration for and on account of the monies paid by them and agreed to be paid in accordance with the promissory note.

By his reply, plaintiff denied the material allegations set forth in defendants' counterclaim.

On July 5, 1944, the parties to this action entered into an agreement for the sale of land and certain personal property, the parts of the agreement material to our present inquiry being as follows:

"1. The first party hereby agrees to sell and convey to the second party, who hereby agrees to purchase, upon the terms and conditions hereinafter stated, the following described property situated in the County of Mora and State of New Mexico, to wit:—

"Real Estate:

"Tract 1: A tract of land bounded as follows: North by Village of Cleveland N. M. and point known as Ensenal, and the road that runs from Cleveland to Vallecitos, N. M., congaining 1400 acres, more of less;

"Tract 2: A tract of land bounded as follows: North by land of Manuel Trujillo, South by tract known as Walker tract, occupied by Mel Walker, East and West by lands commonly known as Wheeler lands, now owned by The Union Land and Grazing Company; containing 102 acres, or more or less;

"Tract 3: A tract of land bounded on North by lands of Pablo Trujillo, South by lands of Emilia Trujillo, East and West by the so-called Daniels lands,—containing 80 acres, more or less;

"Tract 4. A tract of land bounded as follows: North, South, East and West by lands of the United States of America, known as Forest lands.

"(The deed or deeds to be executed and delivered by first party to second party, as hereinafter provided, shall contain a more complete and detailed description of said tracts of land,

if second party deems it necessary to properly identify same; and first party also agrees to executed and deliver to second party additional deeds to said described lands by surveyor's measurement, in case second party should have said lands surveyed and require such additional deed or deeds. The first party represents and covenants that he is unmarried and that he alone has the caoacity to execute deeds to said described lands.)

"Personal Property: Also the following described personal property, also situated on said described lands and in Mora County, N.M. which shall be transferred and conveyed to second party by Bill of Sale as hereinafter provided: 8 head of horses, 7 branded thus: on right shoulder and one branded with an S; brands on R; 21 head of cows branded thus: on left hip —2 N left rib and 11 calves including such additional calves as said cows may may drop until possession thereof is taken by second party; 2 bulls, brander same as cows; also said brand with which said cows are branded, to be duly transferred and conveyed to second party by first party; also all farming machinery and equipment on said described land or any part thereof, including mowing machine, hay bailer, 1 wagon, harness and one saddle. (First party shall be entitled to retain as his own property: 1 buggy and the furniture in the home of first party of said described land.)

"2. The purchase price for said property is $10,150.00 to be paid by second party to first party as follows: $1000. in cash at the time this agreement is signed; $4150. when deed is delivered by first party to second party and second party accepts possession of said described property, as hereinafter provided; and the balance of $5000. shall be evidenced by promissory note of second party for that amount, with interest from its date at 6% per annum, interest to be payable semi-annually in advance; said note shall be dated on the date deed is delivered by first party and second party accepts possession of said described property; said note shall be secured by first mortgage on the real estate hereinbefore described; said note shall be payable and due on or before five years from its date, but second party may make payments thereon in any amount and at any time, thereby reducing interest on the amount of such payments.

"The first party represents and covenants that he owns a merchantable title to all of said described property, real and personal, and that the same are free and clear of incumbrances of whatsoever kind or nature, * * *

4. The first party shall transfer and

convey all of said described land and real estate to second party by a General Warranty deed in the usual form; and shall transfer and convey title to said personal property by the usual form of Bill of Sale, and that he shall deliver such warranty deed and bill of sale and make delivery of possession of said described property, real and personal, upon demand of said second party at any time, upon compliance with the terms of this contract by second party as to payment of said $4150.-00 and execution and delivery of said note and mortgage; provided, however, that first party shall have the right to retain possession of the home or residence on the said described property until October 1, 1944, without paying rent therefore, and shall also be entitled to the vegetables now growing in the garden near such home place —but all hay and other farm crops shall belong to second party as of the date of this agreement, subject to consummation of this agreement, but first party agrees to vacate said home or house and all of said property not later than October 1, 1944.

"6. First party does not agree to furnish abstract of title to said described property, nor to have same surveyed, but agrees to accompany the surveyor of second party when and if employed by second party to make a survey of said lands, and point out to the surveyor the boundary lines of the various tracts of land composing the real estate hereinbefore described, and to make no charge for his services as such; but the cost of abstracts and of survey shall be paid by second party.

"7. On or before the second party may demand deed and transfer of title to said described property, the first party shall furnish second party deeds or other documents showing merchantable title in him to all of said property, and on default in doing so the second party shall have the right to cancel this agreement and in such case the second party shall be reimbursed by first party for any money second party shall have paid on this agreement, or second party shall have the right to accept such of said property as first party is able to prove merchantable title thereto and reject the rest of said property, and the purchase price for the property so accepted shall be upon a proportionate basis, that is such part of said agreed purchase price as the land to which title is merchantable bears to the entire acreage of land hereby agreed to be sold to second party by first part—: provided that first party shall have a reasonable time within which to cure or perfect the title to any of said land as to which the

title may be defective. The second party or his attorney shall specify in writing to first party, on or before August 1, 1944, any defects and objections he may have to the title of first party to any of said lands, and first party shall have a reasonable time thereafter to cure such defects, but not later than September 1, 1944, unless otherwise agreed between said parties."

At the conclusion of the case the court made the following findings of fact which are supported by substantial evidence.

"2. On July 5, 1944 plaintiff and defendants entered into a written agreement whereby plaintiff agreed to sell, and defendants agreed to buy, for a purchase price of $10,150.00, the four tracts of land described in the complaint together with certain personal property, including certain farm animals and equipment located on the real property."

"5. Shortly prior to the 5th day of July, 1944 the plaintiff, being desirous of selling his said ranch to defendant, Cecil R. Walker, contacted the said defendant individually and through agents employed by him, and took defendant to plaintiff's said ranch and showed him the same.

"6. The said ranch is located in mountainous country; a part thereof is covered with a heavy growth of tim-

ber and the same is so situated that all the exterior boundaries of said ranch cannot be seen from any one place on said ranch. ;

"7. On September 6, 1944 plaintiff executed to defendants a warranty deed for the real property in accordance with the contract, and defendants in return executed and delivered to plaintiff the required promissory note and purchase money mortgage on the real property, which mortgage was duly recorded in the office of the County Clerk in the County of Mora, New Mexico, in Book H, page 460 of the Records of Mortgages.

"8. In contracting for the sale of of the real and personal property it was contemplated by the parties that the real property was to consist of only the specific tracts of land described in the contract rather than a specific quantity of land, and, further, they contemplated a lump sum purchase price covering both the real and personal property, and no per acre value was put on the real property, and no unit price was set on the personal property.

"9. According to the terms of the contract between the parties the defendants were granted the specific right to have the lands surveyed and request of plaintiff a new deed or deeds according to such survey description, and the defendants never

exercised this right nor questioned the quantity of land sold until August 24, 1949 when they had it surveyed for the purpose of bringing a suit to quiet title.

"10. Sometime prior to May 18, 1948 plaintiff exercised his option to declare the full amount due on the note for failure to pay the interest on said note and 1947 taxes on the real property, and in order to prevent the exercise of such option the defendants, under date of May 18, 1948, entered into an agreement to pay plaintiff the sum of $1,000.00 on the principal of said note by September 5, 1948, and to pay all delinquent taxes and incidental expenses, and when defendants failed to abide by this agreement plaintiff again exercised his option to declare the full amount due on the note. In order to prevent foreclosure of the mortgage deed, defendants entered into another agreement with plaintiff on the 13th day of January, 1949 calling for the reinstatement of the mortgage deed and the payment of all back taxes on all real property, and such agreement was performed by both parties. At no time in the process of negotiating these two agreements did the defendants make any objection to the quantity of land described in the contract and set forth in the warranty deed.

"11. Defendants have been in actual possession of the real property since 1944, and since that date they have sold or disposed of much of the personal property involved in the contract of sale, have removed in excess of 200,000 board feet of the timber on said property, and have materially changed the condition of the land.

"12. That the said contract so executed between plaintiff and the defendants on July 5, 1944 also provided for the sale by the plaintiff to the defendants of eight head of horses, twenty-one cows, eleven calves, two bulls, and various articles of farming equipment and machinery, for the total consideration of all therefor of $10,-150.00.

"13. That the four tracts of land agreed to be sold by the plaintiff to the defendants contain different acreages, for which a deed was executed and delivered by the plaintiff to the defendants on September 16, 1944, and that the sale of said tracts of land by the plaintiff to the defendants was not by the acre, but that the said purchase price of $10,150.00 was for all of the four tracts of land and for all of the livestock and personal property described in the contract so entered into between the plaintiff and the defendants on July 5, 1944.

"14. That no fraud was practiced by the plaintiff on the defendants, or either one of them, nor were false representations, made by the plaintiff as to the quantity of the land being sold, and there was no mutual mistake on the part of the plaintiff and the defendants as to such quantity.

"15. That the land so sold by the plaintiff to the defendants is not of the same average value per acre; that some of the land is meadow hay land, some is irrigated land, some is dry farming land, some is grazing land, and some is mountainous timber land, and that there are several buildings, fences and corrals on the said tracts of land, and that the said buildings, fences and corrals have substancial value.

"16. That the sale of the real estate involved in this proceeding was not by acreage, but was a sale in gross."

The sum of $1,000 was paid when the agreement was executed. Appellants took possession under the agreement, and thereafter had the land surveyed. It was found to contain 1,153.11, or 428.89 acres less than the area mentioned in the agreement.

■■ It seems to be admitted that the actual number of acres embraced in the four tracts were unknown to either party at the time the contract was entered into. If the sale was made by the acre, and the difference held to be a material one, appel-

lants would be entitled to an abatement of the purchase price in a sum equaling the difference between the number of acres mentioned in the contract and the amount ascertained by the survey. On the other hand, if it was a sale of lands per aversionem, or in gross, appellants would be held to the payment of the purchase price, notwithstanding a deficiency in the area. Whether it was a sale in gross or by the acre, depends upon the intention of the parties. In arriving at the intention of the parties, and that is the test to be applied in this class of cases, we must look to the whole contract, rather than to a single recital. In the instant case, the land was not the only subject of the agreement. There were farming implements, livestock and other personal property including growing crops on the land, which also furnished a part of the consideration. It would seem to be manifest, also, that the intent of the vendee was to pay and the vendor to receive the gross sum of $10,150 for the property sold. These items are all suggestive circumstances, tending to show that the sale was in gross. See Annotation in 1 A.L.R.2d beginning on page 9.

■ In an elaborate opinion in the case of Harrison v. Talbot, 2 Dana, Ky., 258, cited by appellants, Chief Justice Robertson reviewed numerous authorities and said:

"The equity of each case must depend on its own peculiar circumstances.

The relative extent of the surplus or deficit cannot, *per se,* furnish an infallible criterion. The conduct of the parties—the date of the contract—the value, and extent, and locality of the land—the price—and other named circumstances, are always important and generally decisive."

This underlying principle is stated in Morris Canal Company v. Emmett, 9 Paige, N.Y., 168, 37 Am. Dec. 388, in which it was said:

"Where there is a sale of lands per aversionem, or at a gross sum for the whole premises, and not at a specified price by foot or acre, the purchaser is entitled to the land contained within the designated boundaries of his grant, be it more or less, without reference to any quantity or measure as mentioned in the contract or conveyance. And, where there has been no fraud or misrepresentation, the purchaser of the land is neither liable for a surplus nor entitled to a deduction for a deficiency in the quantity or measure of the premises, as mentioned in his contract or deed. The cases in which courts of equity interfere to give relief, where the quantity of land exceeds or falls short of that which is specified in the deed or contract of sale, are those in which the sale of land has been made by the acre or foot, or where there has been a fraud or willful misrepresentation on the part of the party against whom relief is sought to induce the other party to believe the quantity of land conveyed was different from what it really was."

■■ Then in Brassell v. Fisk, 153 Ala. 558, 45 So. 70, the general rule is declared as follows:

"The general rule is that when specific or designated tracts or parcels of land are sold as a whole for a gross sum, and there is no express or implied warranty as to quantity, the transaction is termed a sale in gross. In such a sale quantity is not of the essence of the contract, and in the absence of fraud or gross mistake the purchaser is entitled to no diminution or abatement of the purchase price, if the quantity of land is subsequently ascertained to be less than was supposed or estimated at the time of the sale. * * * The theory on which relief is denied is that the purchaser gets the specific land which he contracted to buy, and must be deemed to have assumed the risk of deficiency in quantity."

It is to be observed that on May 18, 1948, the plaintiff exercised his option to declare the full amount due on the note for defendants' failure to pay the interest on said note and the 1947 taxes, but in order to prevent the exercise of such option the defendants entered into an agreement to pay plaintiff

the sum of $1,000 on the principal and all delinquent taxes then due as well as all incidental expenses. That when defendants failed to abide by the agreement, plaintiff again exercised his option to declare the full amount due on the note, but, that in order to again prevent foreclosure of the mortgage deed defendants entered into another agreement with plaintiff on the 13th day of January, 1949, for the reinstatement of the mortgage deed, which agreement was performed by both parties. That, although the defendants have been in possession of the property prior to and during the process of negotiating these two agreements (upwards of five years) they at no time made any complaint to the plaintiff as to the quantity of the land.

■■ Under the facts in evidence, in our opinion, it is clear that by the agreement of July 5, 1944, Branch undertook to sell, and the Walkers undertook to purchase the four tracts of land together with the personal property located thereon for the lump sum of $10,150 and that the present case falls within the general rule hereinabove announced. The court did not err in holding that the sale was in gross and not by the acre.

Other questions are presented and argued but the view we take as to the character of the sale renders their consideration unnecessary. The judgment is affirmed, and the cause remanded to the District Court with instructions to enter judgment in favor of plaintiff (appellee) and against the defendants (appellants) and the sureties on their supersedeas bond, and it is so ordered.

SADLER, McGHEE, COMPTON and COORS, JJ., concur.