251 P.2d 641

**SPEEDWAY ENTERPRISES, Inc. v. HARTSELL et ux.**

No. 5528.

Supreme Court of Arizona.

Dec. 22, 1952.

Hummel & Hummel, Tucson, for appellees.

PHELPS, Justice.

This is an appeal from a judgment entered by the trial court of Pima County sitting without a jury, in favor of appellees and against appellant and from the order denying appellant's motion for a new trial.

Appellant was defendant and cross-claimant below and appellees were plaintiffs and cross-defendants but for convenience will be referred to as plaintiffs and defendant as designated in the complaint in the trial court.

The facts are that plaintiffs were the owners of a tract of patented land with appurtenant forest grazing permit located in the desert about 18 miles east of Tucson known for many years as the La Cebadilla Ranch and later as the Carrillo Ranch, the Carrillos having owned and operated it for about 50 years. The Hartsells, at the time of the transaction here involved had owned the ranch approximately three years and five months. , The ranch was conveyed to them from the Carrillos by deed carrying legal descriptions showing the townships, range, sections, quarter sections, and lots with the exception of Lot 16, section 3, township 14 south, range 16 east, only a part of which was conveyed and was therefore described by metes and bounds. This deed was recorded and had been of record since September 20, 1945.

Otho Books, Elmer W. Courtland, Tucson, for appellant.

In addition to a comparatively small acreage of patented land, the range carried with it subject to approval of transfer by the forest service, a grazing permit for 152 head of cattle on approximately 34,000 acres of desert land. The number of cattle permitted to be grazed thereon was subject to change by the forest service at any time.

The Hartsells listed the ranch for sale with Wilbur (Slim) Gruver, realtor, as including approximately 915 acres of deeded land and approximately 34,000 acres of forest permit subject to approval of the forest service. The list price for all of the holdings was $50,000, payable according to the terms set forth in the listing.

Mr. Cocioppo representing Speedway Enterprises, Inc., was contacted and taken upon the premises. He was driven over the Reddington Highway leading across the 34,000 acre forest permit tract and given a rough idea of the character of the land contained therein and its location. He was then returned to the ranch house where a jeep was procured to drive over the patented acreage. The jeep was used because, as testified by Mr. Stromei, the real estate agent, a lot of the land was rough and could not be traveled over in an ordinary automobile. Only a portion of said tract could be reached in the jeep. However, the corners of the deeded tract were pointed out to Mr. Cocioppo. The party also went as close to the boundaries of the deeded property as it was possible to go in the jeep.

The tour over the property required about two hours. It was testified that there is plenty of water on the patented property but it was not stated whether there was plenty for stockraising or irrigation purposes. It was further testified that approximately one-third of this property or about 275 acres could be irrigated. By that it is probably meant that it was level enough to be prepared for irrigation. There has never been over 20 acres of the land under cultivation and there was only five acres being cultivated at the time of the sale to Speedway Enterprises, Inc.

At the time the property was shown to Mr. Cocioppo he stated that if Mrs. Hartsell could be persuaded to put in the equipment and the horses which he saw on the place (later sold for $4,500) he probably would be interested in buying the ranch. Mrs. Hartsell later agreed to include the horses and equipment for the original figure of $50,000 and on February 3, 1949, the preliminary contract upon which this cause of action rests, was signed by Speedway Enterprises, Inc., and Wilbur Gruver by his agent, Mr. Stromei, and on the next day personally accepted by Mrs. Hartsell as evidenced by her signature to which she attached a telegram from Mr. Hartsell stating (subsequent to a telephonic conversation with him) that he joined her in the acceptance of the offer of Speedway Enterprises, Inc. At the time the preliminary contract was signed Speedway Enterprises, Inc., deposited with the real estate agent $5,000 as earnest money. Mr. Hartsell lat-

er, to wit on February 10, 1949, joined with his wife in executing a deed to Speedway Enterprises, Inc., covering the deeded property and bills of sale for the personal property, and joined in a waiver of the forest permits as required under the regulations of the forest service thus confirming his acceptance of the preliminary contract of sale as evidenced by his telegram. It developed that there were only 835.9 acres of patented acreage instead of 915 acres. Mr. Cocioppo sought an adjustment downward on the purchase price claiming $8,000 as a proper reduction. The Hartsells rejected this figure. Mrs. Hartsell at the time she sold the ranch believed there were 915 acres in the deeded acreage.

Considerable negotiations were carried on subsequently thereto between Mr. Cocioppo, Speedway Enterprises, Inc., and Mrs. Hartsell and her agent, and between counsel for the respective parties. These negotiations failed to result in an agreement of any kind and on March 8, 1949, defendant gave notice in writing to Mr. Gruver of the cancellation by Speedway Enterprises, Inc., of the contract of purchase of the property involved and demanded a refund of the $5,000 earnest money theretofore deposited.

On April 5 following, plaintiffs made demand in writing upon Mr. Gruver, realtor, and upon Speedway Enterprises, Inc., for the $5,000 earnest money deposited and notified it that plaintiffs would sell the ranch to prevent further damages but would expect compensation from Speedway Enterprises, Inc., for all damages suffered as a result of the breach of its contract of purchase. Pursuant to said notice plaintiffs sold the ranch and all holdings included in the sale to defendant for $44,500 which was the most that she could obtain for it.

Plaintiffs brought this cause of action against defendant asking for damages for breach of contract. Defendant answered and counterclaimed asking for a refund of the $5,000 deposited.

The plaintiffs contend that the sale of the ranch to defendant was in gross and not by the acre and that they did not warrant any specific number of acres in the patented land and that the contract itself used the term "approximately 915 acres". The defendant, on the other hand, claimed a mutual mistake as to the number of acres in the patented tract and asserted that an 80-acre shortage is a material variance entitling it to cancel the contract and to a refund of its deposit. Judgment was entered in favor of plaintiffs for $8,500 and the cause comes to us on the following assignments of error:

1. The trial court erred in failing to grant a new trial or to amend its judgment which found that the 80 acres of deeded land, found to be short, did not constitute a material deviation from the acreage mentioned in the contract.

2. The trial court erred in failing to grant a new trial or to amend its judgment which found that the appellees Hartsell had

sustained damages in the sum of $8,500 by reason of the appellant not performing and complying with the contract.

3. The trial court erred in failing to grant a new trial or to amend its judgment which found that the appellees Hartsell complied with the terms of the agreement and at all times were able and willing to comply with the terms of the contract.

4. The trial court erred in failing to grant a new trial or to amend its judgment which concluded that the appellees Hartsell were entitled to damages in the sum of $8,500.

5. The trial court erred in not granting appellant's motion for judgment on the pleadings for a refund of appellant's earnest money deposit of $5,000.

A determination of whether the sale was in gross or by the acre may settle all of the issues raised. If the finding of the trial court that the sale was in gross is found to be correct the contention of mutual mistake and a material variance in the patented acreage has no merit. On the other hand if the finding of the trial court as to the legal character of the sale is incorrect we must then determine if the shortage of the patented acreage amounts to a material variance that would justify the cancellation of the preliminary contract of sale and purchase and recovery of the $5,000 deposit as earnest money.

We will therefore first consider the question of whether the sale was in gross or by the acre. It is a cardinal rule of this court if there is any substantial evidence to support the findings of the trial court or if the evidence is in conflict on any material issue of the cause of action this court is bound to follow the findings of the lower court.

The preliminary contract of sale and purchase describes the property as:

"The Ranch Known as the Carrillo Ranch located approximately 18 miles east of Tucson, Arizona, on the Tanque Verde road, consisting of approximately 915 deeded acres, approximately 34,000 acres of forest permit, permit subject to the acceptence of the buyer by the Forest agency, to consummate this sale, 1, 1½ Ton International Truck with Stock Rack (nearly new), and 1, Cletrac crawler tractor with all equipment now on the ranch pertaining thereto, and together with twelve horses and mares plus their colts, and riding gear * * *.

"Price shall be Fifty Thousand Dollars ($50,000.00). Terms shall be as follows: $29,000.00 cash, on closing sale (which includes above deposit) and the balance of approximately $21,-000.00 by the assuming existing mortgage now at the Southern Arizona Bank & Trust Company for collection, payable to the Carrillo Estate, terms to be arranged satisfactory to buyer."

█ The manner of stating the purchase price in a real estate transaction has been emphasized by the courts as an important factor in determining whether the sale is one in gross or per acre. If a lump sum is fixed it tends to show a sale in gross or by the tract as distinguished from a sale by the acre. This has been enunciated in many jurisdictions. See 1 A.L.R.2d, page 28, section 13, note 8. And in some jurisdictions where the lump sum shows no relation at all to the supposed acreage of the tract the sale will be held practically without any further discussion to be a sale in gross. 1 A.L.R.2d, page 39, section 17 to page 43 inclusive and cases therein cited. Conversely if the contract fixes the compensation at a specific price per acre it strongly tends to show the sale is based upon a price per acre and not in gross Jurisdictions enunciating this principle are also numerous. See 153 A.L.R., page 13, section 1, note 55 and cases cited thereunder. Neither of the factors above mentioned however are conclusive but the character of the sale is governed by the intention of the parties which must be gathered from the contract and the peculiar circumstances of each case, including the conduct of the parties, the price, the value and extent and locality of the land. If, however, after fixing the price at a specific sum per acre the contract contains a description of the land by metes and bounds or by sections and lots according to Government survey the force of a specific price per acre tending to show a sale based upon the price per acre is destroyed and the sale is held to be in gross. O'Shea v. Hampton, 127 Neb. 60, 254 N.W. 670; Anthony v. Hudson, 131 Ky. 185, 114 S.W. 782. (In the instant case it will be remembered that the property sold is described as the Carrillo Ranch, etc., as hereinabove stated.)

█ We believe the great majority of cases hold that where lands are described by metes and bounds, according to Government survey, or by landmark such as the XYZ Ranch, etc., the sale is one in gross. In Farrier v. Reynolds, 88 Va. 141, 13 S.E. 393, it was held that where the contract described the land as

"all that parcel or tract of land situate on the waters of Sinking creek, in the county of Craig, state of Virginia, known as the 'C. B. Duncan Farm', containing fifty-six acres, more or less * * *"

the sale was one in gross.

In the case of Security Loan & Abstract Co. v. Marchman, 41 Ga.App. 808, 154 S.E. 822, it was held that a contract to sell "120 acres known as the Wilkins place" and stating the boundaries thereof was held to be a sale in gross. Although this case was later reversed it was upon the ground of fraud alleged in amended pleadings and did not affect the above rule. It was also held in Pearson v. Heard, 135 Ala. 348, 33 So. 673, that where a title bond recited that the vendor had sold 234 acres of the east half of a particular

section described by metes and bounds and the price for such tract of land was $700, the number of acres mentioned therein was merely a matter of description. In the case of O'Shea v. Hampton, supra, where a farm was conveyed, described as consisting of a certain one-quarter section and three numbered Government lots fronting on the Platte River containing 248 acres more or less according to U. S. Government survey, the sale was one in gross and not by the acre. The great majority of the courts seem to hold to this view.

[4] Where the purchase price of land is not an equimultiple of the number of acres sold it is a factor in determining the question of whether the sale was one in gross or by the acre. Emerson v. Stratton, 107 Va. 303, 58 S.E. 577, and in Hyde v. Phillips, 61 Wash. 314, 112 P. 257, where legal subdivisions of land were sold as containing 399⅓ acres for $27.50 per acre for a total of $11,000 which was found by a subsequent survey to show a shortage of 31⅓ acres, in an action for specific performance upon tendering the sum of $27.50 per acre for the lesser acreage, the court found that the land was not the only subject of the contract but that it carried with it the sale of personal property and lease of other lands, as well as the interest of the vendor in certain plowing on the leased land which furnished a part of the consideration amounting to more than the estimated acreage if sold at $27.50 per acre; (and notwithstanding the fact that a calculation of the acreage of 400 acres at $27.50 per acre shows a value of $11,000) the court held that the intention of the parties was that the sale was one in gross despite the use by the parties of the figures of $27.50 per acre for the tract as estimated.

It is claimed by defendant that the instant case falls within the rule laid down by the Kentucky court in the case of Harrison v. Talbot, 2 Dana, Ky., 258, 266, 267. This is a leading case on what is and what is not a sale in gross. The court said in that case:

"Sales in gross may be subdivided into various subordinate classifications: First—Sales strictly and essentially by the tract, without reference, in the negotiation or in the consideration, to any estimated or designated quantity of acres. Second—Sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances, or in such a manner as to show that the parties intended to risk *the contingency of quantity, whatever it might be, or how-much-soever it might exceed or fall short of, that which was mentioned in the contract.* Third—Sales in which it is evident, from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties, that they did not contemplate, or intend to risk

more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. Fourth—Sales which, though technically deemed and denominated sales in gross, are, *in fact*, sales by the acre, and so understood by the parties.

"Contracts belonging to either of the two first mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud. * * *

"But in sales of either of the latter kinds, an unreasonable surplus or deficit, may entitle the injured party to equitable relief, unless he has, by his conduct, waived or forfeited his equity."

This case has been followed and the above quotation set out in full in a number of jurisdictions when this question was before them. Defendant claims that the instant case falls within the third classification above quoted. We cannot agree with this view. We fail to find any "extraneous circumstances of locality, value, price, time, or the conduct and conversations of the parties which would indicate that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency." We think it clearly falls within the second classification enunciated by the Kentucky court.

The case of Branch v. Walker, 56 N.M. 594, 247 P.2d 172, under facts similar to those in the instant case held the sale to be in gross.

■ A study of the cases in the various jurisdictions upon the question here involved convinces us that the sale in the instant case was one in gross and not by the acre because:

1. The ranch was described in the preliminary contract of sale and purchase as the Carrillo Ranch located about 18 miles east of Tucson, etc. The words "consisting of approximately 915 acres of deeded land and approximately 34,000 acres forest permit" are merely descriptive.

2. The amount fixed as the purchase price is not an equimultiple of 915 acres.

3. The contract contained not only the patented acreage but also 34,000 acres grazing permit on forest reserve subject to acceptance of the buyer by the forest service.

4. Even the patented acreage had no uniform value. It varied from practically nothing to $100 per acre according to defendant's witness Locke.

5. The contract of sale and purchase included personal property which defendant induced plaintiff to include in the sale which later sold for $4500 without any increase being made in the list price of the ranch of $50,000.

While the evidence seems to indicate that Mrs. Hartsell at the time of the listing and

at the time of the signing of the preliminary contract of sale and purchase believed she owned 915 acres, neither the contract nor any of the surrounding circumstances indicate that the incorporation of the words "approximately 915 deeded acres" was intended as a warranty. It is our view that they were intended to be merely descriptive of the Carrillo Ranch.

We hold therefore that the sale was one in gross and not per acre and consequently that the findings and conclusions of the trial court to that effect were correct. This conclusion we believe, determines the question of any rights claimed to have accrued to defendant as a result of mutual mistake. If the sale was in gross a mutual mistake as to the number of deeded acres in the Carrillo Ranch is immaterial. It also disposes of defendant's counterclaim for a refund of earnest money deposited with Gruver.

We are of the view, however, that the court erred in computing the amount of the judgment. On that point we adopt the computation furnished by defendant as follows:

| | |
|---|---:|
| Gross sale price of property.... | $50,000.00 |
| Less real estate commission.... | 3,000.00 |
| Net sale price under contract... | 47,000.00 |
| Net sale price after cancellation of contract by defendant..... | 40,000.00 |
| Net sale of personal property included in sale to defendant... | 4,500.00 |
| Total net sale price received by plaintiff on resale.......... | 44,500.00 |
| Deducting as commission the sum of ................... | 3,000.00 |
| which plaintiff is obligated to pay as a proximate result of the contract with defendant Leaves a net sale price of...... | $41,500.00 |

The net sale price of $41,500 actually received by plaintiff for the Carrillo Ranch and personal property deducted from the net sale price of $47,000 which plaintiff would have received if defendant had performed its part of the contract leaves a balance or net loss of $5,500 to the plaintiff as a result of defendant's breach. It was therefore error for the trial court to not vacate and amend its judgment to read $5,500 instead of $8,500.

The judgment of the lower court is affirmed in all respects except as to the amount of recovery. With respect to the latter the judgment is reversed and remanded with directions to enter judgment for plaintiffs and against defendants for $5,500 only and costs in the superior court, plaintiffs to pay costs in the supreme court.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.