LINDA LORING OVERLY *vs.* TREASURER AND RECEIVER
GENERAL & others.

Suffolk.    December 8, 1961. — April 12, 1962.

Present: SPALDING, WILLIAMS, WHITTEMORE, & SPIEGEL, JJ.

*Deed,* Construction, Quantity of land conveyed, Acceptance of deed, Deed
of registered land.  *Real Property,* Registered land: certificate of title,
assurance fund.

The grantee in a deed of registered land constituting the only contract be-
tween the parties thereto would have a cause of action at common law
against the grantor on the ground of gross mistake if the lengths of the
side lines of the land running back from frontage on the sea were actu-
ally only approximately one-third of the lengths specified in the deed,
although such lines were described in the deed as being along monuments
and as being of "about" the specified lengths.   [191–193]

In G. L. c. 185, § 101, relating to the assurance fund, the phrases "after
the original registration of land" and "by the registration of another
person as owner" modify only the phrase "is deprived of land or of any
estate or interest therein," so that § 101 permits recovery from the fund
by one "who, without negligence on his part, sustains loss or damage
. . . in consequence of any error . . . mistake or misdescription in any
certificate of title."   [194]

If, in the certificate of title issued on the original registration of a parcel
of seashore land, and again in the certificates issued upon two successive
conveyances of the parcel, the Land Court so misdescribed the boundaries
of the parcel as to indicate that it had a depth back from the shore some
three times its actual depth, there would be an "error . . . mistake or
misdescription" in the certificates within G. L. c. 185, § 101, and if the
loss or damage sustained by the second grantee thereby was not occa-
sioned through his negligence, he could recover from the assurance fund.
[194–195]

CONTRACT.   Writ in the Superior Court dated October 27,
1952.

Demurrers to the declaration were sustained by *Donahue,*
J., and the plaintiff alleged exceptions.

*Richard Wait,* (*Geoffrey Bolton* with him,) for the plain-
tiff.

*Anna Chopek,* Assistant Attorney General, for the Treas-
urer and Receiver General.

*Daniel O. Mahoney,* for Day Trust Company and another,
executors.

SPALDING, J.   The facts on which the three counts of the plaintiff's declaration are based are alleged to be these: On November 29, 1939, Henry C. Everett brought a petition in the Land Court for registration of a tract of land in Nantucket, which included the lot in controversy.   On May 18, 1949, the Land Court issued a decree registering title to the tract.   The decree plan, numbered 17368–A, included, amongst others, as lot A–12, a parcel bounded: "Southwesterly by the Atlantic Ocean; Northwesterly by Proprietors' Road, nine hundred (900) feet more or less; Northerly or Northeasterly by Lot 6A, six hundred seventeen and 55/100 (617.55) feet; and Southeasterly by Lot A–11, nine hundred fifty (950) feet more or less."   This was done "in reliance upon plans on file in said court and without the filing in said case of a plan of the land . . . as required by . . . [G. L. c. 185, § 33]."

Everett subsequently sold lot A–12 to Franklin E. Smith, and the Land Court issued to Smith certificate of title No. 3104, which described that lot: "A certain parcel of land situate in Nantucket in the County of Nantucket and Commonwealth of Massachusetts, bounded and described as follows: Southwesterly by the Atlantic Ocean; Northwesterly by a Proprietors' Road, measuring on the upland about nine hundred (900) feet; Northeasterly by Lot 6B as shown on plan hereinafter mentioned, six hundred seventeen and 55/100 (617.55) feet; and Southeasterly by Lot A–11, as shown on said plan, measuring on the upland about nine hundred and fifty (950) feet.   All of said boundaries, except the water lines, are determined by the Court to be located as shown on plan numbered 17368–A, Sheet 1, drawn by W. T. Fairclough, Engineer for the Court, dated February 1940, as approved by the Court, which is filed with Certificate of Title No. 3099, at the Registry District of Nantucket County.   Said land is shown thereon as Lot A–12."   This certificate contained a misdescription.   In fact the ocean was 600 feet further north than was stated, so that the northwesterly and southeasterly side lines which were represented to be 900 and 950 feet long, respectively, were only about 300 feet in length.

On May 29, 1952, the plaintiff, in reliance on the accuracy of the description contained in Smith's certificate, took a deed from Smith with like description, for which she paid a substantial sum of money. A certificate of title (No. 3404) containing this description was duly issued to the plaintiff. Supposing that she was the owner of a lot some 900 feet in depth, the plaintiff built a house set back from the ocean. Later, as a result of a survey, she discovered that the lot was only 300 feet deep and that as a consequence the northerly line ran so close to the house as to seriously impair its value.

The first count is in contract against Smith, now represented by his executors, as seller of the land. The second and third counts, also in contract, are alternate statements of a claim against the assurance fund. G. L. c. 185, §§ 101–103. Smith's executors and the Treasurer and Receiver General (Treasurer) demurred. The demurrer of the Treasurer contained separate paragraphs applicable to each of the three counts. Paragraph 1 is addressed to the count against Smith and can be disregarded. Paragraph 2 states that the action complained of was a misdescription in a certificate issued to a prior owner and hence the plaintiff is not entitled to recover. Paragraph 3 states that the plaintiff is not entitled to recovery out of the assurance fund under G. L. c. 185, § 101. Smith's executors demur on the ground that the plaintiff has failed to state a cause of action against Smith. Orders were entered sustaining the demurrers, and the case comes here on the plaintiff's exceptions to these orders.

The plaintiff's right to proceed against the assurance fund is found in G. L. c. 185, § 101, which, so far as material, provides that "A person who, without negligence on his part, sustains loss or damage, or is deprived of land or of any estate or interest therein after the original registration of land, by the registration of another person as owner of such land or of any estate or interest therein, through fraud or in consequence of any error, omission, mistake or misdescription in any certificate of title or in any entry or

memorandum in the registration book, may recover in contract in the superior court compensation for such loss or damage or for such land or estate or interest therein from the assurance fund . . . ."

Section 102 provides that if "such action is brought to recover for loss or damage . . . arising wholly through fraud, negligence, omission, mistake or misfeasance of some person other than the recorder . . . [and others mentioned earlier in the section], or arising jointly through the fraud, negligence, omission, mistake or misfeasance of such other person and the recorder . . . [and others] such action shall be brought against both the state treasurer and such other person, as joint defendants."

If, in a case of a joint action, judgment is entered against the treasurer and another, execution shall first issue against such other defendant, and the fund is answerable only to the extent that the execution against the other defendant is not satisfied. If there is no liability on the part of the other defendant, judgment may be entered against the treasurer alone. § 103.

The plaintiff is not seeking to recover against both the assurance fund and Smith. Her position is that in order to recover against the fund she was obliged, under § 102, to join Smith as a defendant. If she is permitted to recover against the fund, she does not seek to recover against Smith. But if recovery against the fund is denied, she presses her claim against Smith.

1. We shall consider first the liability of Smith. While the right to proceed against the fund is entirely statutory, the right to proceed against Smith must be found in the common law. By c. 185, § 57, the deed "shall operate only as a contract between the parties"; the "act of registration only shall be the operative act to convey or affect the land." We are not concerned here with a purchase and sale agreement followed by a deed. See *Pybus* v. *Grasso,* 317 Mass. 716. So far as appears, the only contract between the parties was the deed. As stated by Smith, "the real questions are whether the deed contained any promise on

Smith's part, and, if so, whether the plaintiff got what Smith promised by way of deed to give her.'' This calls for a construction of the deed. Smith argues that the deed purported to convey only what Smith had, and that the plaintiff received just what the deed, properly construed, purported to give her. Hence, it is argued, there has been no breach of any obligation on Smith's part. The plaintiff argues that she was promised a lot some 900 feet deep, and received a lot only 300 feet deep.

There is no allegation in the plaintiff's declaration that quantity of land was a material element of the bargain. Cf. *Pickman* v. *Trinity Church,* 123 Mass. 1, 4–5. Where the purchase price is stated in a lump sum and the lot is described by monuments, the inference is strong that a statement of quantity is used merely for descriptive purposes. 1 A. L. R. 2d 1, 26 et seq. See *Powell* v. *Clark,* 5 Mass. 355, 357. Lot A–12 was bounded by four monuments: a road, the ocean (see *Temple* v. *Benson,* 213 Mass. 128, 132; *Burke* v. *Commonwealth,* 283 Mass. 63, 68), and two adjoining lots (see *Flagg* v. *Thurston,* 13 Pick. 145, 150). There is nothing which indicates that the metes and bounds set out in the deed were used other than for descriptive purposes. Further support for this conclusion is found in the use of the phrases ''about nine hundred . . . feet'' and ''about nine hundred and fifty . . . feet.'' Use of the words ''about,'' ''more or less,'' and the like, to qualify a statement of quantity indicates that the quantity of land is not of the essence of the contract. *Noble* v. *Googins,* 99 Mass. 231, 235. *Pickman* v. *Trinity Church,* 123 Mass. 1, 7. *Cashman* v. *Bean,* 226 Mass. 198, 203. *Ratshesky* v. *Piscopo,* 239 Mass. 180, 187.

But the discrepancy here between the description of land in the deed and the land actually conveyed is very great, the latter being but one third of that described in the deed. It was stated in *Noble* v. *Googins,* 99 Mass. 231, 235: ''[I]n an agreement for the sale and purchase of land for an entire sum either a description of the land by its boundaries, or the insertion of the words 'more or less' or equivalent

words, will control a statement of the quantity of land or of the length of one of the boundary lines, so that neither party will be entitled to relief on account of a deficiency or surplus, unless in case of so great a difference as will naturally raise the presumption of fraud or gross mistake in the very essence of the contract.'' The case at bar falls within this principle. While fraud is not alleged in the declaration, and the plaintiff in her brief disclaims any suggestion of fraud on the part of Smith, we are of opinion that the plaintiff has stated a case against Smith on the ground of gross mistake.

The trial judge relied on *Pybus* v. *Grasso,* 317 Mass. 716, in sustaining Smith's demurrer; Smith also relies on that case. But we are of opinion that that case is not controlling. The *Pybus* case was decided on the principle that the acceptance of a deed following a purchase and sale agreement discharges the seller from any obligations undertaken in the agreement. That is not the situation here.

2. In sustaining the demurrers to the second and third counts, the judge below relied on the case of *Briggs* v. *Treasurer & Recr. Gen.* 224 Mass. 46, which appears to be the only decision of this court involving the right of recovery against the assurance fund. The statement of facts in the opinion is meager but from an examination of the original papers the facts would appear to be these. The plaintiff took a deed to a parcel of land. Thereafter, he learned that prior to the execution of the deed the Land Court had registered a portion of the land to someone else, so that that portion did not pass to him under the deed. It seems to have been assumed that prior to the registration the portion belonged to the plaintiff's grantor and thus, but for the registration which put title in another, would have passed to the plaintiff. In an action by the plaintiff to recover against the assurance fund the trial judge directed a verdict for the defendant. This ruling was upheld by this court on the ground that when the portion was erroneously registered (if such was the fact) the plaintiff was not the owner of it; that if a right of action vested in anyone it

vested in the plaintiff's grantor (the owner at the time of the erroneous registration); and that the right of action did not pass to the plaintiff by the deed.

With the plaintiff's analysis of the *Briggs* case we are in agreement. "Briggs' grievance," she states, "was that he had made a bargain with his grantor for some land which the Land Court had taken away from the grantor and so had prevented him from carrying out his bargain. Briggs put himself forward under § 101 as 'a person who . . . is deprived of land . . . by the registration of another person as owner of such land . . . .' He was not deprived, because he did not have it when the Land Court acted." The plaintiff does not ground her case on that part of the statute that gives a remedy to one who "is deprived of land . . . after the original registration of land, by the registration of another person as owner of such land . . . ." Rather she seeks to recover because she has "sustain[ed] loss or damage . . . in consequence of . . . [an] error . . . mistake or misdescription in . . . [a] certificate of title."

It is contended by the Treasurer that the phrases "after the original registration of land" and "by the registration of another person as owner" modify "loss or damage." We are of opinion that the quoted words were intended to modify only the phrase "is deprived of land or of any estate or interest therein." We read § 101 as permitting recovery against the fund by a "person who, without negligence on his part, sustains loss or damage . . . in consequence of any error . . . mistake or misdescription in any certificate of title." That the plaintiff sustained "loss or damage" cannot be doubted. She got, in fact, approximately one third of the land described in her certificate of title. The question, then, narrows down to whether this was "in consequence of any error . . . mistake or misdescription in any certificate of title."

We are of opinion that there was such an "error . . . mistake or misdescription." A majority of the court read the plaintiff's declaration as alleging that the Land Court, in the original registration in 1949, misdescribed the bound-

aries on the certificate of title, and that this misdescription was repeated at the times of the two subsequent transfers. If the plaintiff is able to prove these allegations at the trial and also prove that her loss or damage was not occasioned through her negligence (see *Sullivan* v. *Ward,* 304 Mass. 614) she may recover from the fund.

3. The orders sustaining the demurrers on the first, second and third counts are reversed.

*So ordered.*