463 P.2d 284

**Riley L. DIXON and Alva R. Dixon, husband and wife, Plaintiffs-Appellants,**

v.

**William H. MORSE and Ellen M. Morse, husband and wife, Defendants-Respondents.**

**No. 10343.**

Supreme Court of Idaho.

Dec. 16, 1969.

Rehearing Denied Jan. 27, 1970.

Rayborn, Rayborn, Webb & Pike, Twin Falls, for appellants.

Becker & Swenson, Phillip M. Becker, Gooding, for respondents.

McFADDEN, Chief Justice.

On October 27, 1965, Riley L. Dixon and his wife, Alva R. Dixon, appellants herein, as vendors executed a sale agreement with William H. Morse and Ellen M. Morse, respondents, as the purchasers, which agreement of sale involved the Dixon farm property situate in Gooding County. Prior to execution of this sale agreement the Dixons had executed a deed to the State of Idaho transferring to the state title to 5.17 acres of the property, which deed was recorded on May 25, 1965.

Under the terms of the agreement the Morses were to pay $40,000 for the property, and all payments were made as required except the final payment due January 15, 1967 in the amount of $7,522.50, plus interest. The Morses refused to pay that amount, but tendered a lesser amount to the escrow holder. The appellants, after serving notices of default, instituted this action to terminate the agreement and be restored to possession of the property or to recover the full amount of the final installment. The respondent answered the complaint and by an affirmative defense to the action claimed a set-off of $1,250.00

against the amount claimed due as compensation for a shortage of some five acres of land. The case was tried to the court sitting without a jury and judgment was entered allowing the set-off of $1,250.00 to the respondents. This appeal was taken from the judgment of the trial court and from the court's order denying the plaintiff's motion to amend findings of fact.

The appellants by their assignments of error challenge numerous findings of fact by the trial court and contend that the court erred in not entering certain findings of fact as proposed by the appellants, and in addition also assign as error certain conclusions of law entered by the trial court.

Neither the findings of fact nor the conclusions of law as entered by the trial court have been made a part of the record on this appeal to this court. This court is thus faced with the problem of trying to determine whether there is merit to the assignments of error attacking the findings of fact and the conclusions of law specified, without having the benefit of all of the trial court's findings and conclusions. However, from the assignments of error, it is apparent that the critical issue on this appeal is whether the sale of the real estate by the appellants to the respondents was a sale of land by the acre or a sale of land in gross.

In Continental Life Ins. Co. v. Murphy, 55 Idaho 573, 44 P.2d 1112 (1935), this court held that if a sale of land is a sale in gross, and not by the acre, a purchaser is not entitled to a diminution of the purchase price for a deficiency in acreage. See also Speedway Enterprises, Inc. v. Hartsell, 75 Ariz. 36, 251 P.2d 641 (1952); Meyer v. Ranson, 80 Ill.App.2d 175, 224 N.E.2d 293 (1967). On the other hand, this court in Lies v. Mulhall, 31 Idaho 205, 169 P. 1165 (1918), stated:

"The rule is well settled that: 'Where a sale of land is by the acre or specific quantity, as where it is at so much an acre or foot, and it is evident that the quantity, or number of acres, specified is of the essence of the contract, the purchaser is entitled to an abatement of the purchase price for a deficiency in the quantity represented to be sold, * * *;' [citing cases.] And whether the vendor knowingly misrepresented the number of acres is immaterial." 31 Idaho at 210, 169 P. at 1166.

The record reflects that the trial court held that this was a sale of land by the acre, rather than a sale in gross, and the question for determination by this court is whether the appellants have sustained their burden of establishing that the trial court was in error in this regard. See Baldwin v. Mittry, 61 Idaho 427, 102 P.2d 643 (1940); Clear v. Marvin, 86 Idaho 87, 383 P.2d 346 (1963); Jordan v. Jordan, 87 Idaho 432, 394 P.2d 163 (1964).

The farm property owned by the Dixons was described in the agreement of sale as

"W ½ SW ¼, Section 1; E ½ SE ¼, Section 2, all in Township 6 South, Range 15 E.B.M. 160 acres more or less. Together with 160 shares of capital stock in the Big Wood Canal Company, Ltd., excepting therefrom that part of the SE ¼ of the SE ¼, Section 2, lying and situate south and West of the Big Wood Canal Company consisting of approximately 3 acres without reservation of water right. Together with all farm machinery situate on the first above described real estate which shall go to the purchasers. (which is valued at $150.00)"

In the fall of 1965 Morse purchased a farm near the Dixon property and was negotiating for another farm. When the owner of the other farm decided not to sell, Morse was advised that possibly the Dixon property would be available, and he and his wife were taken to the Dixon property and introduced to Dixon and his son, Clifton Dixon, who was operating the property. Morse testified that he inquired whether the farm was for sale and how many acres there were. The Dixons responded in the affirmative and said that there were 160 acres and also told him the number of tillable acres, but Morse stated

that he was not interested in the number of tillable acres because he believed that they all could be tilled. Morse also testified that he offered to pay $40,000.00, which he figured out on a piece of paper to be $250 per acre. The Dixons accepted the offer and Morse then inquired whether the farm machinery would be included. After talking for a while, the parties agreed that the equipment would be included, but that the Dixons would retain three acres in the southwest corner of the farm.

The parties then drove out to the south side of the farm to discuss the boundaries. Morse testified that he bought a 160 acre farm subject to certain easements and roadways at $250 per acre and then traded back to the Dixons three acres of the farm for the farm machinery. He denied that what he actually bought was 157 acres plus the machinery. The price, he testified, was figured on the basis of 160 acres with a trade back of three acres.

On their first visit to the Dixon property, after talking to the Dixons, the Morses and the Dixons drove to the vicinity of the three acre tract and there was a discussion as to the boundaries. There is a conflict in the evidence as to what the Dixons told Morse concerning the location of the south boundary and where the state highway would be. Both parties agree that there was a pole line that was pointed out as marking the south boundary of the property. Clifton Dixon testified that he pointed out where the highway was going to cross, cutting over a corner of the farm. He testified that at the time there was a row of building laths, each of which had at the top a little flag, used to mark the proposed center line of the new highway. Morse testified, however, that at the time he saw the line of poles, he did not see any row of stakes marking the center line of the highway.

After the agreement was executed and placed in escrow, the Dixons started building a new fence along the northerly boundary of the highway, as laid out by the highway engineers. This was completed and later the power poles were moved along the new southern boundary. Shortly after executing the agreement Morse left for California and did not see the new fence for several months after it was completed. Mr. Morse testified that he knew nothing about the Dixon sale of the property to the State until he later learned about the shortage on the property.

■ Whether a sale of land is a sale in gross or a sale by the acre depends primarily upon the intention of the parties. Kriel v. Cullison, 165 Md. 402, 169 A. 203 (1933); Branch v. Walker, 56 N.M. 594, 247 P.2d 172 (1952); Annot: 1 A.L.R.2d 9, § 11 at p. 26. The intention of the parties, however, is not to be determined from any one factor, but rather is to be gathered from a consideration of a variety of factors, such as the negotiations of the parties, the mode of stating the purchase price, the mode of describing the land and the language of the contract. 1 A.L.R.2d 9 at § 11, pp. 26–27; Branch v. Walker, supra; Speedway Enterprises, Inc. v. Hartsell, 75 Ariz 36, 251 P.2d 641 (1952).

▪■ It has been held that where the land conveyed is described by metes and bounds or government survey, and the deed or contract also contains a specification of the number of acres, the legal description controls over the stated acreage, the acreage becoming merely descriptive. 1 A.L.R.2d 9 at § 17, p. 39; Meyer v. Ranson, 80 Ill.App.2d 175, 224 N.E.2d 293 (1967); Speedway Enterprises, Inc. v. Hartsell, supra. In the instant case the agreement of sale contains a description of the property according to government survey, and the acreage is specified merely as 160 acres "more or less."

Concerning the use of the phrase "more or less," the annotation in 1 A.L.R.2d 9 at § 18, p. 46 states:

"* * * there is strong authority to the effect that where land is sold by metes and bounds or by any other definite description and is estimated to contain a specified quantity, qualified by the words 'more or less,' the statement of quantity

tends to become descriptive merely, and not of the essence of the contract, thus indicating a sale in gross."

■ Another factor for consideration is the mode of stating the purchase price. When it is stated as a lump sum, as opposed to a price per acre, courts have generally found a sale in gross. 1 A.L.R.2d 9, at § 13, p. 28. See also Kriel v. Cullison, supra; Speedway Enterprises, Inc. v. Hartsell, supra; Overly v. Treasurer and Receiver General, 344 Mass. 188, 181 N.E. 2d 660 (1962); Branch v. Walker, supra; Continental Life Ins. Co. v. Murphy, 55 Idaho 573, 44 P.2d 1112 (1935).

Where, however, the price even though stated as a lump sum, is an equimultiple of the number of acres specified in the contract, it is often held that the sale is a sale by the acre. 1 A.L.R.2d 9 at § 14, p. 31. In the present case the purchase price is stated as a lump sum of $40,000. Although the appellants argue that this is not a common multiple of 157 acres, as they assert is called for in the contract, accepting the respondents' view what the sale was for 160 acres initially with a trade of 3 acres for farm machinery, the price figures out at $250.00 per acre.

■ Considering the record as a whole, and even recognizing that certain of the factors employed in determining whether a sale of land is in gross or by the acre would be in the appellant's favor, still there is sufficient competent evidence, although in some areas it is conflicting, to support the trial court's determination that this was a sale by the acre. Thus, the oft repeated rule that findings of a trial court supported by substantial, competent although conflicting evidence, will not be disturbed on appeal is applicable. Formont v. Kircher, 91 Idaho 290, 420 P.2d 661 (1965); Gardner v. Fliegel, 92 Idaho 767, 450 P.2d 990 (1969).

The trial court determined there was a five acre shortage; under this theory of the case, where the property was sold by the acre, the off-set being computed on the per acre value sufficiently established the amount.

The judgment of the trial court is affirmed. Costs to respondents.

McQUADE, DONALDSON, SHEPARD and SPEAR, JJ., concur.