REX EWING, JR., and REX EWING, III, Appellants, v. WARREN E. BISSELL, GILBERT W. BISSELL, JOHN F. PARSONS, TERESA ELLEN PARSONS, VELMA DICKSON, BARBARA BISSELL, KYLE FREDERICK PARSONS, CHARLES L. RUTHE & ASSOCIATES, INC., and DENNIS JAEGER, Respondents.

No. 19126

August 23, 1989 777 P.2d 1320

*Marquis Haney & Aurbach*, Las Vegas, for Appellants.

*R. Ian Ross*, Las Vegas; *Zervas & Evans*, Las Vegas; *Wanderer & Wanderer*, Las Vegas, for Respondents.

## OPINION

By the Court, ROSE, J.:

The appellants Rex Ewing, Jr., and Rex Ewing, III (Ewings) purchased a parcel of real estate from respondents Warren E. Bissell, Gilbert W. Bissell, John F. Parsons, Teresa Ellen Parsons, Velma Dickson, Barbara Bissell and Kyle Frederick Parsons (sellers) for $22,000. The sellers represented, and the Offer and Acceptance indicated, that the parcel contained approximately 1.34 acres. This was the same quantity of acreage designated on the plat map, and all parties believed that the parcel contained approximately that acreage prior to sale. Subsequent to the sale, the assessor informed the Ewings that their parcel contained only .83 acres.

The Ewings, alleging alternate theories of fraud, negligent misrepresentation and mutual mistake of fact, brought suit for an abatement of the purchase price to reflect the reduced acreage they received. After a non-jury trial, the district court determined that the Ewings had not established a right to an abatement under any theory, that the sale of the lot was a sale in gross, and that the respondents were entitled to attorney fees of $41,011. Because

the record establishes substantial evidence of a mutual mistake of fact as to the acreage in the parcel sold, and because this was not a sale of real estate in gross, abatement of the purchase price was appropriate and the district court erred in not granting Ewings this relief.

## FACTS

Respondent Dennis Jaeger (Jaeger), a real estate agent, had conversations with one of the owners of the property in question and ascertained that they wanted to sell it. In his conversations, he discovered that the plat map listed two noncontiguous lots each as parcel No. 10, and on the larger parcel, the one ultimately purchased by the Ewings, was written 1.34 acres. Jaeger inspected the property and thought there might be a question as to the total acreage of the lot; however, he could not determine the actual size of the lot by viewing it. After walking the property, he had "that gut feeling that this property was probably 1.34 acres, plus the easement, that it would be less than 1.34 or that, in fact, was probably 1.34."

The property was listed for sale and a Wayne Miller originally indicated that he would purchase the property for $22,000. Prior to the execution of the Offer and Acceptance, Jaeger took Miller to the property, but again from this viewing, could not tell the property's exact acreage. Jaeger told Miller that the exact size of the lot would be ascertained when escrow was established. Jaeger prepared an Offer and Acceptance which described the property as containing approximately 1.34 acres and it was signed by the sellers and Miller.

Wayne Miller was unable to consummate the purchase of the property and the Ewings considered assuming Miller's right to purchase as set forth in the Offer and Acceptance. When the Ewings called Jaeger, Jaeger read the Offer and Acceptance verbatim.

Ewings met briefly with Jaeger and told him that they wanted to build two homes on the lot to be fed by one community well. Local zoning required a minimum of one-half acre to construct a house, and Jaeger advised the Ewings that they would be able to build one home per one-half acre. The Ewings placed a $500 deposit on the property, thereby succeeding to Miller's interest as stated in the Offer and Acceptance.

A lot near the one in question was being purchased by a friend of the Ewings, Herb Roman. Roman was the person who informed the Ewings of the opportunity to purchase this lot and that it contained approximately 1.34 acres. An escrow for the sale from the sellers to the Ewings was established at Nevada Title Company. Jaeger knew that a better legal description of the

property was needed. He informed the Ewings of this need, and the title company subsequently prepared a more detailed legal description. Jaeger told the sellers that they could get a survey of the property, but neither party requested a survey. In February, 1982, the escrow for the sale of the parcel to the Ewings closed simultaneously with the sale of the lot from the same sellers to Herb Roman. Roman purchased .92 acres for $18,000. The Ewings believed they were purchasing 1.34 acres for $22,000, but actually were purchasing only .83 acres.

At the close of escrow, the Ewings received a tax bill for 1.34 acres and paid the taxes on that acreage. In December, 1982, the Clark County Assessor's office informed the Ewings that they received only .83 acres in the transaction. At that time it was discovered that the 1.34 acre notation on the parcel purchased by the Ewings, as shown on the plat map, actually was the total amount of acreage contained in the two noncontiguous parcels marked No. 10.

Two weeks after the Ewings purchased the property in question, Jaeger's mother-in-law who lived with him purchased the smaller parcel of property, which contained .51 acres and also was labeled as Parcel 10, for $750. Jaeger's mother-in-law subsequently sold this parcel within the year to a third party for $7,000.

## LEGAL DISCUSSION

The first issue we must decide is whether to affirm the district court's decision that the evidence did not support the Ewings' assertion that relief was warranted on the theory of mutual mistake of fact. In an earlier case concerning whether there was a mistake of fact in a real estate transaction, and if the sale was of acreage in gross, we announced the standard of review on appeal.

> The general rule of this court is that when the evidence is conflicting and there is substantial evidence to sustain the judgment it will not be disturbed. But there is an exception to the general rule to the effect that where, upon all the evidence, it is clear that a wrong conclusion has been reached, the judgment will be reversed.

Seyden v. Frade, 88 Nev. 174, 177, 494 P.2d 1281, 1283 (1972) (quoting Consolazio v. Summerfield, 54 Nev. 176, 179, 10 P.2d 629 (1932)) (citations omitted).

Testimony established that everyone connected with this sale believed the lot contained 1.34 acres: the sellers; the sellers' agent, Jaeger; the initial purchaser, Wayne Miller; the ultimate

purchasers, the Ewings; and the neighbor who recommended the purchase, Herb Roman. The parties' belief that the parcel contained 1.34 acres is further supported by the documentary evidence. The plat map indicated the parcel was 1.34 acres and the Offer and Acceptance described the lot as containing that same amount.

Jaeger argues that the Ewings were aware that the exact size of the lot was not known and that they should have ordered a survey if they wanted this information. However, this ignores that Jaeger was the person most aware of the possible size discrepancy and that two noncontiguous lots both were labelled Parcel 10. If anyone had the responsibility to insure that the exact size of the lot was ascertained before escrow closing, it was the sellers and their real estate agent Jaeger. NRS 645.633(6); cf. Holland Rlty. v. Nev. Real Est. Comm'n, 84 Nev. 91, 436 P.2d 422 (1968) (Seller's agent under duty to disclose material facts that may affect buyer's decision to purchase).

We conclude that the Ewings established that there was a mutual mistake of fact and that there is no substantial evidence to hold otherwise.

 ██

Even if there is a significant mutual mistake of fact as to the acreage contained in a real estate parcel, the purchaser is usually not entitled to relief if the sale was of acreage in gross. Seyden v. Frade, 88 Nev. at 177, 494 P.2d at 1283. Therefore, the second question we must answer is whether the district court correctly held that this was a sale of property in gross. In making this determination, the *Seyden* case again gives us guidance.

> Whether a sale of land is a sale in gross or a sale by the acre depends primarily upon the intention of the parties, which is to be determined from a variety of factors such as the negotiations of the parties, the mode of stating the purchase price, the manner of describing the land and the language of the contract. Dixon v. Morse, 463 P.2d 284 (Idaho 1970); Speedway Enterprises v. Hartsell, 251 P.2d 641 (Ariz. 1952); 1 ALR 2d 9.

88 Nev. at 176. In that case, the purchasers were buying a ranch that was comprised of approximately 320 acres in Mason Valley and approximately 2,300 acres of range land located from Wabuska to Adrian Valley. Even though the range land was approximately 140 acres less than estimated, and the sellers were without title to convey an additional 40 acres, we reversed the district court and held that a substantial variance from the approximated acreage would not affect the sale when the sale was deemed to be one of acreage in gross.

Most sales that are held to be transfers in gross contain large amounts of acreage and rightly so because the specific acreage is less important than the general description of the large parcel being purchased. In the case at bar, however, we are dealing with a small amount of acreage and the purchasers were concerned about having at least one acre upon which to construct two homes. The Ewings received less than an acre and 38 percent less land than they bargained for.

When purchasing a residential lot, the price is usually set by two basic considerations: the location and the size of the parcel. In reviewing the limited evidence of comparable sales, it is shown that $22,000 was a fair price for 1.34 acres, but not for .83 acres. Herb Roman purchased less than an acre for $18,000 and Jaeger's mother-in-law sold her half acre parcel for $7,000. This leads to the inescapable conclusion that the Ewings would not have paid $22,000 for the lot if they realized it contained only .83 acres and the Ewings so testified. We conclude therefore that this was a sale by the acre and not one in gross as the district court found.

Courts have held that a purchaser is entitled to the equitable remedy of an abatement of the purchase price where the property is sold by the acre and there is a material difference between the actual and estimated quantity of land represented by the seller. *See* Mills v. Brown, 568 S.W.2d 100 (Tenn. 1978). The amount of the abatement is to be determined by multiplying the quantity of the deficiency by the price per acre. *See* Wilbur v. Wilson, 179 Cal.App.2d 314 (1960). Accordingly, the Ewings are entitled to an abatement of $8,373.13, reflecting a reduction in the purchase price conforming to the quantity of land actually received.

Having held that there was a mistake of fact and that this was not a sale of acreage in gross, it is not necessary to consider the Ewings' additional claims of error. Since the Ewings are the prevailing parties and will receive a judgment in excess of the $5,000 purported offer of judgment, no attorney's fees or costs shall be assessed against them. This case is remanded to the lower court for entry of judgment conforming with this decision.

YOUNG, C. J., STEFFEN and SPRINGER, JJ., concur.

MOWBRAY, J., concurring in part and dissenting in part:

Respectfully, I dissent from that part of the majority opinion declaring that the Ewings are entitled to an abatement. In this case, there is substantial evidence in the record to support the district court's decision that this was a sale in gross rather than a

sale per acre. The parties negotiated for the purchase and sale of a residential lot, described as approximately 1.34 acres for a price of $22,000. The Ewings were interested in the specific lot because of its location next to their friend Herb Roman. The price expressed was for the lot in gross not per acre or square foot. Moreover, the Ewings expressed their desire to keep the lot and not rescind the contract. Therefore, I would affirm the district court's decision that the Ewings were not entitled to an abatement. However, I concur with the majority, although for different reasons, that the award of attorney's fees should be reversed.